FREMONT, ELKHORN & MISSOURI VALLEY RAILROAD
COMPANY V. GEORGE BATES.

FILED MAY 2, 1894.    No. 5522.

1. **Trial:** ADMISSION OF TESTIMONY: REVIEW.    The rulings of the
trial court in admitting testimony examined, and *held* no preju-
dicial error in such rulings.

2. **Instructions.**    The action of the court in giving certain instruc-
tions and refusing to give others requested by defendants re-
viewed, and *held* no error in either the giving or refusing.

3. **Eminent Domain:** MEASURE OF DAMAGES: EVIDENCE.    On
the trial of an appeal in the district court, from condemnation
proceedings of right of way of a railroad through a farm, *held*,
that testimony of the rent, which could be obtained for the farm
since the appropriation of the right of way, was competent, not
as a basis for damages, but as tending to show whether such ap-
propriation had depreciated the market value of the farm; and
this is the rule whether the rent is, or had been, for a money
consideration or a share of the crops.

4. ———: VALUE OF PROPERTY: TIME.    The valuation of property
taken for a right of way for a railroad should be made as of the
time of filing the petition for the assessment of damages for the
land. (*Missouri P. R. Co. v. Hays*, 15 Neb., 224.)

5. **Railroads:** RIGHT OF WAY: DAMAGES: EVIDENCE.    In an in-
quiry whether, and how much, the part of a farm not taken for
railroad right of way is depreciated in value by the appropria-
tion of a part, evidence as to the size of the farm; the purpose
for which it is used; the improvements thereon, and how lo-
cated; the direction of the road across the farm; the cuts and
fills made or to be made in the construction of the road; the
width of the right of way; the height of embankments; the
depth of ditches; the inconvenience of crossing the track from
one part of the farm to another; the liability of stock being
killed; the danger from fire from passing trains, are all facts com-
petent for the jury's consideration in determining the deprecia-
tion in value of the remainder of the farm.    *St. Louis & S. E. R.
Co. v. Teters*, 68 Ill., 144; Mills, Eminent Domain, sec. 163, fol-
lowed." (*Omaha & S. R. Co. v. Todd*, 39 Neb., 818.)

ERROR from the district court of Douglas county. Tried below before KEYSOR, J.

*John B. Hawley* and *B. T. White*, for plaintiff in error, cited: *Missouri P. R. Co. v. Hays*, 15 Neb., 224; *Blakeley v. Chicago, K. & N. R. Co.*, 25 Neb., 212; *Republican Valley R. Co. v. Linn*, 15 Neb., 234; *Chicago, K. & N. R. Co. v. Hazels*, 26 Neb., 375; *City of Plattsmouth v. Boeck*, 32 Neb., 297.

*Charles Ogden*, also for plaintiff in error.

*John C. Cowin* and *Henry D. Estabrook, contra,* cited: *Dearborn v. Boston, C. & M. R. Co.*, 24 N. H., 179; *Watson v. Pittsburgh & C. R. Co.*, 37 Pa. St., 469.

HARRISON, J.

March 23, 1887, the plaintiff in error filed a petition in the county court of Douglas county and instituted proceedings to condemn the right of way, etc., for a line of railroad across and through the southeast quarter of section 20, township 16, range 12, in Douglas county, Nebraska. The regular condemnation proceedings were had and the commissioners made a report finding the quantity of land taken to be 9.88 acres and valued the same at $60 per acre, and awarded and appraised the damages to the owner in the sum of $592.80. The defendant in error George Bates was, at the time of the condemnation proceedings, the owner of the east half of said section 20, which was all in use as one farm. He appealed from the award of the commissioners to the district court of Douglas county. The case was tried to the court and a jury, on the papers sent up from the county court, without further pleadings. The jury returned a verdict for Bates in the sum of $5,084.22. The railway company filed a motion for a new trial, which was over-ruled and judgment entered on the verdict, against the

company.  In the record there is the following stipulation:

"It is hereby agreed by the parties to this suit, that for the purpose of the hearing therein on error in the supreme court there was presented to the county judge of Douglas county, by the railroad company, a petition in due form of law, praying for the appointment of appraisers to assess for the right of way in question; that such appraisers were duly appointed, and made their appraisement and award, from which the plaintiff duly appealed to the district court, and filed an appeal bond in due time and in proper form; and that no questions are to be raised in the supreme court on account of the absence of pleadings of any kind, and that the report of the appraisers to the county judge, and which appears in the bill of exceptions, shall stand and be taken as a sufficient pleading and description of the right of way and land in controversy, and the case shall be considered and disposed of in all respects as though the record showed a sufficient petition for the appointment of the appraisers and their appointment by the county judge; also, that an appeal from the award was duly and legally taken, and an appeal bond, from the award of such appraisers, filed in due time as required by law.

"Dated at Omaha this 8th day of June, A. D. 1892."

This somewhat imperfect and general statement of some of the main and more important points in the testimony will, we think, suffice for an understanding of the questions raised by the petition in error for our decision.

The first assignment of error argued by counsel for plaintiff in error in the brief filed is that the trial court erred in permitting the plaintiff Bates and some of his witnesses to testify, over objections of defendant the railroad company, to the value of the farm after the railroad was constructed.  In other words, that the testimony as to value should have been confined to the time of the taking, March 23, 1887.  The rule in this state we believe to be

that the damages must be assessed as of the time of the taking. In the case at bar the witnesses were, some of them, interrogated in regard to the value of the land immediately prior to March 23, 1887, and then asked " What, in your opinion, was the market value of that farm per acre, after the railroad had gone through it and made its embankment and cuts?" To this defendant objected. The objection was overruled and the witness allowed to answer. One of these witnesses had, prior to the asking of the above question, been asked and answered, that he knew or was acquainted with the reasonable market value of the Bates farm during the spring and summer of 1887. The evidence in this case shows that the 320 acres of land owned by defendant was all worked as one farm, the northeast quarter being, a greater portion of it, used for pasture and what is known in this state as " hay land." There was also a part of this quarter section which was being cultivated. The southeast quarter was all, or had been all, under cultivation, and on this quarter section there was a house, stable, and other improvements; that running through the farm there was a stream of water, and that taken as a whole the half section of land constituted a good Nebraska farm and was worth, according to the witnesses for plaintiff, from seventy to eighty dollars per acre, and by witnesses for defendant stated to be worth from fifty to sixty dollars per acre. The railroad was so constructed that its direction was somewhat diagonally across the entire southeast quarter, thus dividing the farm. Its line was near the house and other buildings, some two hundred feet or more distant from the house and to the north of it. In front of the house was what was described as "a fill," some twenty feet high, and beyond this, and on the plaintiff's land, a deep cut. The condemnation was in March and the fills and cuts on this farm made during the following summer. The court below, in permitting the questions, such as we have quoted above, to be answered, probably committed an

error; but after a careful and critical reading of all the testimony in the case, we are satisfied that the error, if any, was without prejudice to the rights of defendant.

There were several witnesses who testified as to the values before and after the taking, and the court instructed the jury on this particular point, as to time of computing the damages, as follows: " The measure of damages is the difference between the fair market value of plaintiff's whole farm of 320 acres with and without defendant's right of way as graded and constructed. The values to be compared are those of March 25, 1887, the day when said condemnation proceedings were commenced in the county court. It is true that the improvements on said right of way were not made on that day, but the law presumes them to have been made on said day as contemplated and outlined in defendant's petition in the condemnation proceedings. You will not, therefore, in your estimate of said values be allowed to include any elements of appreciation or depreciation of values which have arisen since said 25th day of March, 1887." And there is evidence in the record that the market value of land remained very much the same during the entire year of the taking.

There is the further reason for not reversing the case because of the possible error committed in the admission of this testimony. The counsel for defendant tried the case upon exactly the same theory as to values and the time at which the witness should be asked to state them. We will quote his examination of one of his witnesses: "D. J. O'Donahue, called as a witness for defendant," after some preliminary testimony, was questioned and answered as follows:

Q. I will ask you to state what the value of this Bates farm, per acre, was immediately prior to the 25th day of March, before the location and the construction of the railroad through the same?

29

A. I think about fifty dollars an acre would be my estimate.

Q. We are asking you for your judgment?

A. Yes, sir.

Q. What was the value of the farm immediately after the construction and operation of the railroad through the farm?

A. I don't think there was any material change in the value of the farm.

It will be seen from this that he introduced exactly the same kind of testimony to which he had previously objected when offered and introduced by plaintiff. This waived the error, if any, of the court in admitting the testimony, and it cannot be considered applying the rule in *Chicago, K. & N. R. Co. v. Wiebe*, 25 Neb., 542, where it was held: "Where evidence is introduced without objection to prove certain facts, a party cannot predicate error thereon, and the same rule will apply if a party excepts to the introduction of certain evidence, and afterward introduces the evidence objected to, or that of a like character."

The next assignment of error is that the court erred in giving certain instructions, and each of them on its own motion. Under this assignment the counsel for plaintiff in error has argued, in the brief filed in this court, objections to but two of the instructions, the fifth and ninth, which were as follows:

"5. If you find from a preponderance of the evidence that the value of plaintiff's land, not actually appropriated by defendant, has been decreased by the existence of any stagnant pools, floods, or objectionable thing necessarily caused by the improvement of said right of way, you should also add said decrease in value to your verdict for plaintiff; but if said pools, floods, or objectionable thing be caused by the faulty and negligent construction of said right of way, then any decrease in the value of the land

in consequence thereof must be disregarded by you and omitted from your verdict."

" 9. The burden of proof is on the plaintiff, and he must sustain his claims for damages by a preponderance of all the evidence. You are the judges of the credibility of the witnesses, and in weighing their opinions of value you may consider the facts or circumstances proved on the trial which tend to show that they have an interest in the result of this case, or that they are biased or prejudiced against either of the parties, and you may also consider their experience and means of knowledge and observation; and you are instructed that it is proper for the witnesses in estimating the value of the farm to consider the effect of said right of way, or the uses to which the said farm is adapted, on its productiveness, on its appearance, rendering it more or less attractive to buyers. The witnesses may also consider whether or not said right of way renders it more inconvenient and expensive to carry on said farm, and whether or not its proximity to plaintiff's dwelling renders said dwelling less desirable by reason of the prospect and view thereof being obstructed, and because of the noise and smoke of defendant's trains; and you are also instructed that witnesses may, in fixing the value of the farm, consider the danger by fire to plaintiff's dwelling and crops from defendant's trains, the danger of plaintiff, his teams and live stock being killed or injured while crossing defendant's track in the use and enjoyment of his farm. But the witnesses have no right to base their valuation on any loss which plaintiff has already suffered, or may hereafter suffer, by reason of the operation of defendant's road, and you will not be allowed to include any such loss or prospective loss in your verdict, nor can witnesses be allowed to base their valuations on any general benefits which plaintiff derives from the building and operation of defendant's railroad."

It is argued that instruction No. 9 does not embody the

law applicable in cases of this kind. By this instruction the jury were told, in effect, that if the fact that the risk or hazard of the happening of any of the things enumerated in the instruction, being present in the mind of a person desiring to purchase such a farm, would operate to lessen its value or decrease the price which would be paid for it (in other words, lessen its market value), then they were essential elements entering into the inquiry, then before the jury, and necessary constituent elements of a just and true measure of the damages to plaintiff's farm resulting from the construction of defendant's line of road through the farm. In the case of *Omaha S. R. Co. v. Todd,* 39 Neb., 818, in which opinion was filed in this court March, 1894, written by RAGAN, C., it was held: "In an inquiry whether, and how much, the part of a farm not taken for railroad right of way is depreciated in value by the appropriation of a part, evidence as to the size of the farm; the purpose for which it is used; the improvements thereon, and how located; the direction of the road across the farm; the cuts and fills made or to be made in the construction of the road; the width of the right of way; the height of embankment; the depth of ditches; the inconvenience in crossing the track from one part of the farm to another; the liability of stock being killed; the danger from fire from passing trains, are all facts competent for the jury's consideration in determining the depreciation in value of the remainder of the farm. *St. Louis & S. E. R. Co. v. Teters,* 68 Ill., 144; Mills, Eminent Domain, secs. 162, 163, followed." To the same effect are *Chicago, P. & St. L. R. Co. v. Graney,* 25 N. E. Rep. [Ill.], 798; *Chicago, P. & St. L. R. Co. v. Nix,* 27 N. E. Rep. [Ill.], 81; *Chicago, P. & St. L. R. Co. v. Blume,* 27 N. E. Rep. [Ill.], 601; *Denver & R. G. R. Co. v. Bourne,* 16 Pac. Rep. [Col.], 839.

The objection urged to instruction No. 5 is that it is not specific and definite enough, too broad and general, wherein it states to the jury that they may allow damages for

" pools and floods or objectionable thing necessarily caused by the improvement of said right of way." The words " objectionable thing " comprise the portion of the instruction against which the complaint is directed. We think the above words, used in the connection in which they are placed in the instruction, are subject in some degree to the criticism made and urged by defendant's counsel. It is quite probable that the court should have enlarged on the instruction in its statement and enumerated the different elements of damages instead of grouping them, as it did, under the head of " objectionable thing ; " but it will be noticed that the court, in the first sentence of said instruction, told the jury : " If you find from a preponderance of the evidence that the value of plaintiff's land, not actually appropriated by defendant, has been decreased ; " thus limiting the " objectionable thing" to what was shown by the evidence. This, coupled with the fact that in No. 9 the jury was informed specifically what things could or should be considered as objectionable, was sufficient to enlighten the jury as to the court's meaning contained in the statement made in instruction No. 5, of which the plaintiff in error complains. The two instructions, when considered together and viewed in connection with the facts as developed by the evidence, we think are sufficiently definite and specific enough at least not to mislead the jury as to the measure of damages.

The third point of error argued in the brief filed for plaintiff in error is that "the court erred in refusing to give instructions 2, 3, and 4, as requested by the defendant below." These instructions are as follows :

" 2. In this case the jury cannot allow any damage to plaintiff on account of danger of loss to the plaintiff by fire occasioned by the operation by the defendant of its railroad across his land.

"3. In this case the jury cannot allow any damage to the plaintiff on account of danger of loss from killing

cattle or other stock in the operation of its railroad over the land of the plaintiff.

"4. In this case the jury cannot allow any damages on account of danger to life or limb of plaintiff or his family by reason of the operation of its road by the defendant over the plaintiff's land."

The theory upon which the counsel for plaintiff in error claim they offered these was that the court, in its ninth instruction, had told the jury that they could consider the danger of certain occurrences, of injuries to stock, buildings, etc., and that these were necessary to inform the jury that no damages could be allowed on account of these matters, as an independent proposition. We think this was sufficiently done by the court in the portion of the instruction No. 9, where it stated to the jury: "But the witnesses have no right to base their valuation on any loss which plaintiff has already suffered, or may hereafter suffer, by reason of the operation of defendant's road; and you will not be allowed to include any such loss or prospective loss in your verdict;" and did not err in refusing to give these three instructions.

The only other point argued in the brief is that inasmuch as the plaintiff in the court below testified that he had rented the farm for a number of years, and that he had rented it for the same rent since the construction of the road as before, leaving out the ground actually taken for the right of way, and no instruction was given by the court on the subject of increase or decrease of the value of the farm for leasing as affecting the value of the farm, or on the applicability of such evidence as tending to show whether or not the value of the farm was lessened by the construction of the railroad across it, that it was error in the court to refuse to give an instruction on this point offered by plaintiff in error and which reads as follows:

"If the jury believe from the evidence that the plaintiff has rented the farm in question both before and since the

construction of the railroad, and that he has rented for as
high a rate and rental since as before the construction of
the railroad, then it is proper for the jury to consider such
facts in arriving at the question of damages to the lands
not actually taken."

The testimony on the subject of rent is very short, and
we will give it in full:

Q. You have rented this land, have you?

A. Part of the time.

Q. Have you got any less rent on account of the rail-
road than before.

A. I have got—I think so.

Q. Why? State to the jury why.

A. Well, I rented it on shares and they can't produce as
much.

Q. Well, when you rented the land, did you rent it for
any less than taking out the railroad land than you did
before?

A. No, sir.

Q You rented it for just the same?

A. Yes, sir.

Redirect examination :

Q. Mr. Bates, you have rented your farm for a cash
rental or a share of the crops?

A. Share of the crops.

Q. That has been your invariable rule, has it?

A. Yes, sir.

Q. And you rented it for the same share of the crops as
before?

A. Yes, sir.

The above testimony is confined to what is generally
known as "grain rent," or a share of the crops, and the
proposition presented is whether or not the above evidence
was pertinent to the issues being tried in the case and
should have been submitted to the jury by a proper in-
struction. If the plaintiff Bates had established by compe-

tent evidence the fact that the farm could not be rented as
readily or that he had been forced to accept a reduced rent,
either money rent or in share of the crops, since the con-
struction of the road, and that the reduction was attributa-
ble to the inconvenience in cultivation and dangers which
the construction of the railroad across the farm necessarily
caused to any person occupying or working it, he would
have been entitled to the benefit of such testimony and to
have it submitted to the jury by the court in an instruction,
not as an independent element or cause of damage, and to
be taxed and allowed for in the estimate of the jury as
such, but as relevant to the issue of the market value of the
farm before and after the appropriation of the right of way
by the company, and as tending to show that the farm had
suffered a depreciation in value by such appropriation, and
it would unquestionably have been competent and would
have tended to prove the fact that the market value of the
farm had been lessened, for the market value to be deter-
mined here is the value to the average would-be purchaser
of a farm, and one of the inquiries he would make would
be, what is the value of the farm for leasing or renting
purposes?   The share of the crops given is very often in-
creased or diminished by the owner of the farm furnishing
seed for planting, or teams, tools, etc., for use in cultivation
of the farm; but we have no doubt that anything that
would render the farm less convenient for cultivation, or
would annoy or be a detriment to one owning the farm and
cultivating it, would operate in the same manner and to the
same extent upon a person to whom it was leased and who
was living upon or cultivating the farm as a renter.   In
this case it appears that Bates was not living on the farm
or working it himself but was letting it to renters.   Hence
the above reasoning applies here in full force.   If the above
is a fair conclusion, then it follows that the evidence here-
inbefore quoted, on the subject of the rent received for the
farm before and since the condemnation of the land, was

competent and material to the issues presented for trial in this case.     To this effect is *City of Omaha v. Hansen*, 36 Neb., 135, 54 N. W. Rep., 83, where it was held by this court : " Where rented property is injured by a public improvement it is proper, on an inquiry of the damages, to inquire to what extent, if any, the improvement will affect the rental value.     This is merely an element of damages for the jury to consider, keeping in view the fact that the measure of damages is the difference between the value of the property immediately before and immediately after the construction of the same, and disregarding public benefits." (See, also, *Minnesota B. L. R. T. Co. v. Gluek*, 48 N. W. Rep. [Minn.], 194; *Denver & R. G. R. Co. v. Bourne*, 16 Pac. Rep. [Col.], 839; *City of Denver v. Bayer*, 7 Col., 113, 2 Pac. Rep., 6; 3 Sutherland, Damages, p. 437; *Pittsburgh & C. R. Co. v. Rose*, 74 Pa. St., 363; *Kahn v. New York E. R. Co.*, 22 N. Y. Supp., 793; *Alger v. New York E. R. Co.*, 15 N. Y. Supp., 960.)     The cases cited all refer to money rent, but we think the principle is the same and the reasoning in the above cases applicable to the evidence in reference to rent in the case at bar.

It follows that if the company, by its counsel, requested an instruction which covered the question raised by the testimony on the subject of rent, and was sufficiently definite and certain in its terms and application to such testimony, that it should have been given; but we do not think instruction No. 5, above quoted, was so pertinent to the evidence regarding the rent that the refusal of the court to give it was error which calls for a reversal of the judgment.     By the instruction the jury were to be told that if they believed that the plantiff has rented his farm " for as high a rate and rental since as before the construction of the railroad, then it is proper to consider such facts in arriving at the question of damage to the lands not actually taken."     Webster defines the word "rental" as follows: "A sum total of rents; as, an estate that yields a rental of

ten thousand dollars a year." Therefore, by the use of the word "rental" in the instruction requested the jury would have been informed that if Mr. Bates received as great an amount, or sum total, from the farm as rent since the construction of the road as he did before, they might consider this fact in their inquiry in determining the damages to the farm, or the portion of it not actually taken by the company for its line of road. This was not what was meant, nor what was intended to be submitted to them. The evidence on this point, hereinbefore quoted, was confined to "grain rent," or a share of the crops, and had the instruction presented been confined to the statement that if the jury believed from the evidence that the plaintiff had received as great or large a percentage or share of the crops as rent since the construction of the road as before, such fact was proper for the jury to consider, then it would have been reversible error for the court to refuse to give it, but, as framed and worded, the instruction was not fairly applicable to the evidence and would probably have misled the jury, and the court therefore did not err in refusing to give it. The judgment of the lower court is

AFFIRMED.