WILLIAM A. EHLERS ET AL., APPELLANTS AND CROSS-APPEL-
LEES, V. CHICAGO, BURLINGTON & QUINCY RAILROAD
COMPANY, APPELLEE AND CROSS-APPELLANT.

FILED MAY 25, 1929. No. 26513.

*William A. Ehlers,* for appellants.

*Byron Clark, Jesse L. Root, J. W. Weingarten* and *C. W. Krohl, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and DAY, JJ., and BLACKLEDGE and REDICK, District Judges.

ROSE, J.

This is a controversy over interest on an award by a commission appointed by the county judge of Douglas county to assess damages resulting from the taking of real estate for railroad purposes in a condemnation proceeding wherein the Chicago, Burlington & Quincy Railroad Company exercised the right of eminent domain. The proper-

ty condemned is described as the south 90¼ feet of lot 5 and all of lots 6 and 7, in block 221 of the original plat of Omaha. On one of the lots there were three houses occupied by tenants.

The present action is an independent suit in equity in the district court for Douglas county for enforcement and distribution of the award with interest from the time the railroad company filed its petition in the office of the county judge, for an order restraining the railroad company from interfering with the occupancy of the tenants pending litigation and from collecting or receiving rents. Plaintiffs herein are William A. Ehlers and Margaret C. Ehlers, who procured title to the lots after the condemnation proceeding was instituted, and the defendants are the Chicago, Burlington & Quincy Railroad Company, Bryce Crawford, county judge, and William Haffke, holder of tax sale certificates. The answers of these defendants challenge the alleged right of plaintiffs to interest on the damages awarded from the beginning of the condemnation proceeding. From a judgment of dismissal plaintiffs appealed.

The record shows the regularity and the validity of the condemnation proceedings. Following are material dates and facts:

September 15, 1924, lots sold by the county treasurer to Haffke, who received three tax sale certificates—No. 7,703 for $2,657.96, No. 7,704 for $2,824.42, No. 7,705 for $2,824.-46; September 15, 1924, Haffke paid subsequent taxes amounting with accrued interest to $423.33; December 5, 1924, petition of railroad company for condemnation filed in the office of the county judge and commissioners appointed; February 17, 1925, view of premises by commission after due notice to all parties interested; February 18, 1925, report of commission awarding property owners $15,528.30 filed in the office of the county judge—to Haffke $9,176.17 for taxes including interest at 12 per cent. per annum from September 15, 1924, to February 17, 1925 and to the Ehlers $6,352.13; February 24, 1925, award of

$15,528.30 paid to the county judge by the railroad company; March 24, 1925, plaintiffs herein commenced in the district court for Douglas county a suit demanding from the railroad company $6,618.78 with interest from December 5, 1924, applying for and procuring an order restraining the county judge from paying to Haffke any sum in excess of $8,730.17, with interest at 12 per cent. per annum from September 16, 1924, to December 5, 1924, and also applying for and procuring an order restraining the railroad company from interfering with the occupancy of the premises by the tenants and with the collection of the rents; March 25, 1925, suit last described removed by the railroad company to the federal court and shortly afterward plaintiffs filed and procured a dismissal in the state court—an order which the railroad company considered void, leaving the case pending in the federal court; April 1, 1925, plaintiffs commenced the present suit for the purposes already stated and the railroad company filed a petition April 3, 1925, for its removal to the federal court; May 1, 1925, parties stipulated that the railroad company waived its right to remove the present action to the federal court, and that out of the award of $15,528.30, $9,176.17 should be paid to Haffke and the remainder or $6,352.13 to plaintiffs, reserving to the respective parties the right to litigate herein the questions involving interest; May 1, 1925, award distributed by the county judge according to the terms of the stipulation.

It is contended by plaintiffs that their damages were necessarily determined by the commission under the law as of the date on which the railroad company instituted the condemnation proceeding and that therefore they were entitled to interest therefrom on the award until paid or from December 5, 1924, to May 1, 1925. In the argument on this question plaintiffs cited the statute granting to railroad corporations the power of eminent domain and three former cases. Comp. St. 1922, sec. 5278; *Missouri P. R. Co. v. Hays,* 15 Neb. 224; *Northeastern Nebraska R. Co. v. Frazier,* 25 Neb. 53; *Fremont, E. & M. V. R. Co. v.*

*Bates,* 40 Neb. 381. The statute cited does not mention interest nor specifically provide that the damages shall be assessed as of the date on which the petition for condemnation is filed but does contain the following proviso:

"No appropriation of private property for the use of any corporation provided for in this chapter shall be made until full compensation therefor be first made or secured to the owners thereof." Comp. St. 1922 sec. 5278.

In the present instance compensation was not made or secured when the railroad company filed its petition for the assessment of damages. In the case first cited, however, the court ruled as follows:

"The valuation of property taken for right of way for a railroad should be made as of the time of the filing of the petition for the assessment of damages to the land." *Missouri P. R. Co. v. Hays,* 15 Neb. 224.

In the opinion therein it was stated: "The authorities seem to agree pretty generally that the damages in such cases must be assessed as of the time of taking." The court took the view that the definite location of the line of the road and the application for the appointment of commissioners to assess the damages constituted a taking within the meaning of the statute. On this point the other cases cited by plaintiffs are of the same import. The rule quoted, therefore, is based on the premise that the taking occurs when the condemnation proceeding is commenced. The definite location of the line of railroad or the right of way was a material factor in fixing the time of the taking. The land here involved is not taken for a right of way. While the lots have been condemned for railroad purposes, plaintiffs themselves protested before the commission that the railroad company was without power to appropriate their property on the ground that it was too far from the right of way. In addition the evidence herein shows without contradiction that the railroad company did not take the lots or possession thereof when they commenced the condemnation proceeding December 5, 1924. The owner received and retained the rents for that month. The rents

for January and February were collected but not paid to the railroad company. Uninterrupted possession was not acquired until later. After possession was taken plaintiffs interfered by means of equity suits and restraining orders. Possessory rights were not definitely determined until May 1, 1925, when the award without interest was distributed pursuant to stipulation. Under the different circumstances outlined herein the statute and the cases cited are not authority for the allowance of interest on the award from December 5, 1924.

It is argued further that interest on the award should be allowed on the ground of delay by the railroad company in procuring the assessment of damages. It is insisted that possession could have been taken upon 10 days' notice authorized by law. Comp. St. 1922, sec. 5290. The statute does not require possession or condemnation within 10 days. Two nonresidents interested in the land were notified by publication. Plaintiffs acquired title to the lots after the petition for condemnation was filed in the office of the county judge and they were brought into the initial proceeding by a supplemental petition after December 5, 1924. There is nothing to show unreasonable delay, lack of diligence or bad faith on the part of the railroad company.

Plaintiffs contend also that in any event interest should be allowed from the time the condemnation money was deposited with the county judge February 24, 1925, until it was distributed May 1, 1925. This contention is based on the proposition that the railroad company, when depositing the award with the county judge, directed him to retain it during the period of 60 days allowed for an appeal—the time fixed by a statute upon which reliance was placed. Comp. St. 1922, sec. 5284. There seems to have been justification for that course. When the commissioners were engaged in the performance of their duties, while viewing the premises, they were told in substance by William A. Ehlers, in the hearing of a railroad representative, that the railroad company was a nonresi-

dent without power to exercise the right of eminent domain and that the lots were more than 100 feet from the center of the main line of the railroad and not subject to condemnation for railroad purposes. It was a reasonable precaution to assume that these questions, owing to the hostile attitude of plaintiffs, would be raised and urged on appeal. Plaintiffs did not waive their right of appeal May 1, 1925, and then demand their award as they might have done. Under the circumstances neither equity nor law calls for the allowance of this item of interest.

Plaintiffs present another question by challenging the right of Haffke, holder of the tax sale certificates and the tax liens, to interest after commencement of the condemnation proceeding December 5, 1924, or after the date of the award February 17, 1925. In this connection it is insisted that the commissioners went beyond their powers in allowing such interest, that they thus deprived plaintiffs of a portion of their damages and that therefore the award to Haffke was, to that extent, void. In the argument on this issue plaintiffs assert and assume that Haffke acted for and represented the railroad company. There is nothing in the pleadings or the evidence to support that view. Haffke's rights were asserted in his own behalf throughout the proceedings though his attorneys represented the railroad company also. He bought the lots at tax sales in his own name, paid the taxes and procured the certificates evidencing his liens. He was an owner of the lots within the meaning of the statute granting to railroad corporations the right of eminent domain. *Graf v. State,* p. 485, *post.* In *State v. Missouri P. R. Co.,* 75 Neb. 4, the following rule was announced:

"Real estate cannot be taken by condemnation proceedings unless payment therefor to the owners is first made or secured. All parties having an interest in the land are 'owners' within the meaning of the statute. A lien for taxes is such an interest in the land."

It was the duty of the commission to assess all damages to the owners, including Haffke. Comp. St. 1922, sec. 5290.

His lien on the lots exceeded in value the equity of plaintiffs. Referring to him the award provides:

"We do find and assess his damages by reason of the taking of said premises by said railroad company for railroad purposes the sum of $9,176.17, with interest at the rate of 12 per cent. per annum from February 17, 1925, up to the date of payment to him out of the condemnation money for his said interest."

The rule applicable to this question was stated in a former opinion as follows:

"A landowner who fails to appeal from the freeholders' award in a condemnation proceeding, is conclusively bound by it." *Omaha Bridge & Terminal R. Co. v. Reed,* 69 Neb. 514.

According to the revenue law Haffke was entitled to the amount of the taxes with interest at the rate of 12 per cent. per annum until paid. He was not deprived of this right in the condemnation proceeding, since the award of the appraisers exceeded all liens. He looked to the land and not to plaintiffs or to the railroad company for payment. Plaintiffs could have stopped the interest on delinquent taxes by paying the liens when they acquired title to the lots but they elected to await payment out of the award and are bound by it since they did not appeal from it.

A claim for counsel fees as costs is urged on a cross-appeal but a statute allowing them has not been cited or found. There is nothing to show that such fees are taxable under an exception to the general rule requiring statutory authority for the allowance of attorney fees as costs. The claim, therefore, is disallowed.

The equity suit by plaintiffs was properly dismissed by the district court.

AFFIRMED.

Note—See Eminent Domain, 20 C. J. 811 n. 16, 848 n. 79, 1065 n. 48—(Interest) L. R. A. 1916C, 1113; 32 A. L. R. 98; 10 R. C. L. 163; 2 R. C. L. Supp. 984; 4 R. C. L. Supp. 656; 5 R. C. L. Supp. 546; 6 R. C. L. Supp. 602—Costs, 11 A. L. R. 895.