CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DIST. v. FAIRCHILD et al. (three cases).

Nos. 12028–12030.

Circuit Court of Appeals, Eighth Circuit.

Feb. 27, 1942.

M. M. Maupin, of Ogallala, Neb. (R. O. Canaday and P. E. Boslaugh, both of Hastings, Neb., and R. H. Beatty, of North Platte, Neb., on the brief), for appellant.

William H. Wright, of Omaha, Neb. (Fred A. Wright, of Omaha, Neb., and G. J. McGinley, of Ogallala, Neb., on the brief), for appellees.

Before STONE, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

These are three separate appeals taken by The Central Nebraska Public Power and Irrigation District from judgments against it in condemnation proceedings which it prosecuted to obtain three tracts of land necessary for its public project. There is but one Transcript of Record and the appeals were submitted at the same hearing.

### No. 12,028.

This appeal is from the judgment for damages direct and consequential on account of the taking by the District of land known and referred to as the Clarence H. Fairchild land. The judgment provides that the owners of said land recover from the District the sum of $65,011.01 (being the amount of the jury's verdict) with interest thereon at the rate of six percent from the date of the filing of the District's petition for condemnation and that the judgment shall continue to draw interest until said judgment and the funds deposited in the court for the payment of the same is finally disbursed to the landowners as their interest therein may subsequently be determined by a court of competent jurisdiction. The judgment further provides that the court retains jurisdiction for determination of the manner of disposition of the proceeds of the judgment and of the ownership and interest therein of the parties to the action.

In this appeal the appellant District does not complain against the principal amount of the judgment rendered against it. Its

JOHNSEN, Circuit Judge, dissenting in part.

complaint is against that part of the judgment which requires it to continue to pay interest until the respective interests of the parties in and to the proceeds of the judgment are determined by a court of competent jurisdiction and until distribution is finally made to them; and against that part of the judgment which awards interest from the date of the petition for condemnation.

It appears that the Power and Irrigation District filed its petition for condemnation in the District Court on October 1, 1938, setting up its corporate capacity as a licensee and its authority under the Federal Power Act, 16 U.S.C.A. § 791a et seq., to condemn lands necessary for the construction in which it is engaged of the on-river dam and reservoir on the North Platte river near Keystone, Nebraska. It described the Clarence H. Fairchild land specifically and named the parties having or claiming to have interests therein and prayed for notice to be given such parties and for the appointment by the court of appraisers to assess the damages. The appraisers were appointed and in due course assessed the damages in respect to the Clarence H. Fairchild land at the sum of $52,238. The owners of the land being dissatisfied with the award of damages joined in taking an appeal from the award to the federal District Court. Although copy of the notice of appeal is not included in the record, it is not questioned that all parties having any interest in the land were joined. The District also appealed from the appraisers' award.

After the docketing of the appeals in the District Court a pre-trial hearing was had before the judge at which time the judge directed that the parties who had taken the appeal as owners of the land should be designated plaintiffs and the District should be designated defendant and that the parties should file pleadings and make up issues in the case. It was ordered that the only issue to be tried to the jury was the question of damages by reason of the condemnation proceedings. It was further ordered that the interests of the various parties in and to the proceeds of the judgment to be recovered be subsequently determined by the court and that distribution be ordered by it accordingly. The pre-trial proceedings are not included in the record verbatim and there may be ambiguity in the narrative account as to whether all that was ordered was "in compliance with the requests of the respective plaintiffs", but the record shows no objection to any of the orders made at the pre-trial hearing.

Pursuant to the pre-trial orders the landowners filed their petition in which they described with particularity the nature of the interests in and to the land of the respective parties plaintiff and also plead at length various elements of damage for which they prayed recovery far in excess of the appraisers' award. The District in its answer "admitted the nature, kind and character of plaintiffs' ownership of title to the lands involved as alleged" and denied certain allegations relative to elements of damage. The amount of the jury's verdict was as stated $65,011.01, being considerably more than the appraisers' award of $52,238 appealed from.

Upon the return of the jury verdict the court directed the entry of judgment thereon, but thereafter a hearing was had on the question whether an allowance of interest should be included in said judgment. Evidence was offered and received in respect to that issue and findings of fact were made as to the times when the District took possession of particular parts of the land and as to the use the landowners had made, pending the appeal, of the parts not entered upon. It was found generally that the landowners had profited from such use. The District had deposited the amount of the appraisers' award with the Clerk of the Court upon the filing of the report of the appraisers and after the verdict of the jury on the appeal the deposit was increased to equal the amount of the verdict and the court made findings to that effect. It also found "that the title to the premises, because of the manner in which they were conveyed to the plaintiffs is in a condition that makes it necessary for the court to * * * determine the respective rights of the various plaintiffs in and to the proceeds of said judgment." So far as disclosed by the record, the title remains in the same condition. The entry of the final judgment complained of followed after the return of the verdict and the findings and conclusions subsequently made by the court.

We turn first to the conclusion of the court embodied in the judgment that the landowners were entitled to recover interest upon the amount of the verdict. Nebraska law is controlling and we observed in Feltz

v. Central Nebraska Public Power & Irrigation Dist., 8 Cir., 124 F.2d 578, decided January 15, 1942, that such law must be deduced from Section 74-307 Compiled Statutes of Nebraska for 1929, and the state decisions which have proceeded from it. It appeared in the Feltz case that the landowners had appealed from an award of appraisers and that on their appeal they had obtained a less favorable judgment and award than was given them by the appraisers and it was decided that they were not entitled to have interest on the amount of the jury verdict included in their judgment for damages. The converse of that situation is presented here in that these landowners have obtained a verdict on their appeal which is for a larger amount than the appraisers' award. The Nebraska cases to be considered are the same cases cited in the Feltz case, and we conclude from reconsidering them in relation to the facts in this case that the landowners here were entitled to have interest added to the amount of the jury's verdict included in their judgment.

■ The appellant District does not seriously dispute that the Nebraska decisions are generally to the effect that a landowner who appeals from an appraiser's award in a condemnation case is entitled to have interest included in the judgment on appeal where he has obtained a larger award than that of the appraisers, but it contends that there is an exception when it is affirmatively shown that the landowner retained the possession and use of his land, or a substantial part of it, and derives gains and profit from it during the pendency of the condemnation proceedings. It contends that in such a case the Nebraska decisions do not justify the addition of interest upon the entire amount of the jury's verdict from the date of the commencement of the condemnation. It contends that interest should not commence until the time of entry into possession by the condemnor.

It argues that expressions in the opinions of the Nebraska court from which an inference contrary to their contention may be drawn were made in cases where there was no affirmative showing, like in this case, that the landowner had retained and profited by the use of a part of the land pending the condemnation proceedings. The Nebraska cases discussed for the District on this point are: Sioux City R. R. v. Brown, 13 Neb. 317, 14 N.W. 407;

Berggren v. Fremont, E. & M. V. R. Co., 23 Neb. 620, 37 N.W. 470; Atchison & N. R. R. Co. v. Plant, 24 Neb. 127, 38 N.W. 33; Burlington & M. R. Co. v. White, 28 Neb. 166, 44 N.W. 95; Chicago, R. I. & P. R. Co. v. Buel, 56 Neb. 205, 76 N.W. 571; Grimm v. Elkhorn Valley Drainage District, 98 Neb. 260, 152 N.W. 374; Ehlers v. Chicago, B. & Q. R. Co., 118 Neb. 477, 225 N.W. 468; Swygert v. Platte Valley Public Power & Irrigation District, 133 Neb. 194, 274 N.W. 492. We think that the only inference which can fairly be drawn from the course of Nebraska decision is that the rule of law embodied in the instruction which the court gave to the jury in Sioux City, etc., v. Brown, supra, has been adhered to and remains the law to be applied in the trial of appeals from appraisers' awards, to-wit, "in case the value of the [lands taken in condemnation] was found by them to exceed the award appealed from, they should allow interest on that value."

■ We do not find that the Nebraska Supreme Court has departed from its ruling as to the time from which the interest should be computed. The lawful date (also stated in the instruction referred to) is "from the time of condemnation". In this there is no ambiguity. The constitutional provision prohibiting the taking or damaging of private property for the public use without just compensation does not of itself suggest procedure for the taking of private property for such uses. That has evolved in Nebraska from the statute and from the decisions which firmly establish that for the purpose of assessing damages the "condemnation" or "taking" is deemed to occur at the time the petition for condemnation is filed. The value of the land involved in the condemnation is related to that date and so is the damage. Therefore no other date can be taken as the date from which the interest may be computed.

■ The concept firmly established of a taking or damaging related back to the date of filing of the condemnation petition would seem to lead logically to the elimination from the appeal proceedings of any direct inquiry by the jury into the question of the landowner's use or non-use of the land pending the appeal. As the values and damages to be fixed by the jury must be related by them to the commencement date, it would be immaterial to their inquiry whether the landowner had gained or lost money by staying on the land at the

sufferance of the condemnor after the commencement date and while the appeal is pending.

■ On the other hand, when the matter of interest, as distinct from the amount of the values and the damages, is taken up by the court, the consideration recurs that just compensation for the taking and damages is the controlling purpose and end of all the proceedings. The Nebraska statutory provision for the allowance of interest to the landowner who has been successful in his appeal is very general and meager, and in the opinion of the majority of the court it fairly may be and should be construed to require the court to offset against its allowance of interest any amounts proved to have been actually gained by the landowner in cash or property by way of rental for the condemned property after the commencement of the proceedings and prior to possession taken by the condemnor.

■ But we think there are compelling reasons against requiring such an offset on account of the landowner's mere remaining on the land at the sufferance of the condemnor without any agreement between the parties. The continued possession may have some value to the landowners in some instances, but the precarious tenure renders the value difficult of ascertainment. After the landowner has succeeded in his appeal and sustained his right to interest, opening the door to the condemnor to subject the landowner to further litigation over such an uncertain issue conflicts with the statutory scheme for condemnation. A fundamental object of it is to provide practical and simple means to settle the uncertainty of evaluation consistently with providing just compensation. After negotiations fail, the appraisers first, and then the jury, are provided to those ends. Relating the determinations of values to a certain date also contributes.

The majority finds no conflict in requiring matters as definite as actual rental payments to be taken into account by the judge, but evaluation of temporary occupation of land is identically the same kind of function as that intended by the statute to be performed through negotiation, submission to appraisers and then to a jury. Nothing in the statute indicates any intention to impose that function upon the judge at any stage of the appeal proceedings. Where the condemnor has voluntarily suffered the landowner to remain upon the land condemned, it cannot complain because the condemnation statute has not included any means to recoup the value of use so voluntarily relinquished.

It is not claimed or proved that any rental was received in cash or property by the landowners from the land involved in this appeal during the pendency of the appeal in the District court and no offset against the interest should be made under our ruling.

■ Proceeding to the question as to the time to which the interest should run. The Nebraska statute contemplates that on the filing of a petition for condemnation of land all persons having an interest in the land shall be notified and each one is entitled to have his respective interest considered by the appraisers. Each is entitled to the protection of the constitutional provision. When the appraisers' award has been made, and where, as in this case, the proportionate interests of the respective owners as between themselves are not obvious or agreed to, the owners who join in an appeal from the award may elect either to demand a determination of the damage to each of them respectively by the triers of the issue of damage, or they may elect to have the jury find the damage in one lump sum and to defer to a later time a determination of or agreement upon division of the jury's award. But the condemnor proceeds in the public interest to take the land itself to which it is entitled irrespective of subdivisions of interest that individuals may have brought about among themselves. Its duty is to see to it that notice of the taking is brought home to each owner. The limit of its obligation is to pay just compensation, judicially ascertained, for the land it takes and the damage it occasions. It has a right to such ascertainment and when the ascertainment has been made it must be allowed to discharge its obligation by payment. When it makes its payment into court the amount of such payment constitutes a fund which must be deemed a substitute to the owners for the land of which they have been deprived and for their damage. See State ex rel. Katelman v. O'Fink, 84 Neb. 185, 120 N.W. 938; Omaha Bridge & Terminal Ry. Co. v. Reed, 69 Neb. 514, 96 N.W. 276; State ex rel. v. Superior Court, 80 Wash. 417, 141 P. 906; Marion v. City of Detroit, 284 Mich. 476, 280 N.W. 26.

In this case the total damage inflicted upon the landowners by reason of the taking of their land was definitely shown by the verdict of the jury and interest mathematically computed and the condemnor thereupon became entitled to have its total obligation of award and interest fixed in a judgment which it could pay in substitution for the land taken and damaged. We think the trial court was in error in refusing to enter such a judgment upon the coming in of the jury verdict in this case.

The landowners would justify the refusal because their respective interests between themselves in and to the lands had not then been determined or agreed upon. But we are not persuaded that the existence of that situation should be attributed to the condemnor to prevent or defer the entry of the judgment we have described. The situation must be attributed to the landowners' acquiescence in a jury determination of the entire damage in a lump sum and their failure to demand such a determination of the just compensation due the several individuals. See State ex rel. Katelman v. O'Fink, 84 Neb. 185, 120 N.W. 938; Omaha Bridge & Terminal Ry. Co. v. Reed, 69 Neb. 514, 96 N.W. 276; State ex rel. v. Superior Court, 80 Wash. 417, 141 P. 906; Marion v. City of Detroit, 284 Mich. 476, 280. N.W. 26. The duty of giving them notice and opportunity to assert their claims had been performed by the condemnor. It is true the pre-trial order of the court provided for a subsequent adjudication of the respective interests of the parties in and to the lands and for an order of distribution of the proceeds of a judgment to be entered. But it was not indicated that the judgment referred to would or could be other than a lawful judgment on the jury's verdict, or that the court would refuse to enter the judgment when the total amount of the damage which the condemnor had caused by the taking became fixed by jury verdict.

On account of the error of the court in entering its judgment in terms which denied the condemnor the right to pay and discharge the obligation devolving upon it by reason of its condemnation of the lands and the jury's determination of the amount of damage, the judgment entered by the District court should be modified so as to constitute a judgment for the amount of the jury's verdict with interest at six percent per annum on said amount from the commencement of the condemnation proceedings up to the date of the entry of the judgment, to-wit: January 17, 1941, without restriction upon the right of the District to pay the money into court and upon such payment being made to become discharged from the obligation of the judgment. Any proceedings that are or may be pending to determine the respective interests of the owners of the lands among themselves may be related to the judgment as modified or to the proceeds thereof.

### No. 12,029.

This appeal is from the judgment for damages direct and consequential of the taking by the District of land known and referred to as the Howard E. Fairchild land. The judgment is in the same form as the judgment appealed from in No. 12,028, and the principles applied in the decision of that appeal control disposition of this appeal.

The trial court made finding upon the evidence that the part of the land involved in this case which was not taken into its possession by the condemnor remained continuously in the possession of the landowners and that the use thereof was valuable and profitable to them. There was no specific finding as to the amount of rental received by the landowners pending appeal, but there was uncontradicted evidence that they received about $500 from the public for hunting and trapping privileges thereon. The amount of such receipts should be offset against interest.

On account of the error of the court in entering its judgment in terms which denied the condemnor the right to pay and discharge the obligation devolving upon it by reason of its condemnation of the lands and the jury's determination of the amount of damage, the judgment entered by the District court should be modified so as to constitute a judgment for the amount of the jury's verdict with interest at six percent per annum on said amount from the commencement of the condemnation proceedings up to the date of the entry of the judgment, to-wit: January 17, 1941, less receipts to be offset, without restriction upon the right of the District to pay the money into court and upon such payment being made to become discharged from the obligation of the judgment. Any proceed-

ings that are or may be pending to determine the respective interests of the owners of the lands among themselves may be related to the judgment as modified or to the proceeds thereof.

### No. 12,030.

This appeal is from the judgment for damages direct and consequential of the taking by the District of land known and referred to as the Frederick M. Fairchild land. The owners of the land joined in taking an appeal from the award of appraisers and on the appeal the verdict of the jury in their favor was for $9,908.56, a smaller sum than the appraisers had awarded. The judgment, however, is in the same form as the judgments appealed from in No. 12,028 and No. 12,029, and it has interest included in it at the rate of six percent per annum from the date of the filing of the petition for condemnation.

We conclude for the reasons set forth in the opinion in Feltz v. Central Nebraska Public Power & Irrigation District, 8 Cir., 124 F.2d 578, decided January 15, 1942, that the inclusion of interest in the judgment was erroneous and that the landowners in this case who had not obtained a more favorable award were not entitled to have interest allowed.

It appears, as found by the trial court, that on December 9, 1938, and within six days after the filing of the report of the appraisers, the District deposited the sum of $15,087.50 with the Clerk of the District Court to cover the damages to these landowners and the amount necessary to discharge the District's obligation to them has at all times been available to them. The District has, therefore, performed everything on its part to be done and we are unable to discern any sound basis upon which it may be compelled to pay interest to these landowners. The District's appeal from the appraisers' award was successful in that the award was reduced. Its contentions in this court that no interest should have been included in the judgment and that a judgment should have been entered which it could forthwith pay have been sustained. We conclude therefore in this case that the judgment should be modified so as to equal the amount of the jury's verdict without interest added. The District may satisfy the judgment by applying the necessary amount of the money which it has heretofore deposited in court. Any pro-

ceedings that are or may be pending to determine the respective interests of the owners of the land among themselves may be related to the modified judgment.

No. 12,028, modified with directions in accord with opinion without costs of the appeal.

No. 12,029, modified with directions in accord with opinion without costs of the appeal.

No. 12,030, modified with directions in accord with opinion. The costs of appeal to be taxed against the landowners.

JOHNSEN, Circuit Judge (dissenting in part).

I believe that a property owner who is not required to relinquish possession during the condemnation litigation period, and who chooses to retain such possession while his right to compensation is being determined, ought equitably to be required to account for the reasonable value of the use of the property during the period of his retained possession, and not simply for such rental payments as he has actually collected from third parties, if he subsequently attempts to claim interest on his damage allowance from the time the condemnation proceedings were instituted.

The allowance of interest in a condemnation case in Nebraska is not a fixed statutory right, but simply a means of insuring "just compensation" to the property owner. The only thing for which it can reasonably be held to constitute compensation is a deprivation of the use of the property or of the funds substituted for the property, during the condemnation litigation period.

A property owner who is not required to relinquish possession, and who chooses to retain such possession and to enjoy the occupancy of the property and its other benefits, while his right to compensation is being determined, is hardly in the same commanding situation with respect to this element of "just compensation", as one who has been forced immediately to vacate the property. And so a majority of the courts that have passed upon the question seemingly have held that interest ought not to be allowed during the period that the property owner is allowed and chooses to retain possession. See 18 Am.Jur. 916, § 275, and 96 A.L.R. 199, annotation. Some courts have taken the view that interest

may properly be allowed in such a situation, but that the property owner should be required to account for the value of the use of the property during the period of retained possession, as a set-off or reduction in the amount of the interest. See 32 A.L.R. 102, annotation.

The Supreme Court of Nebraska has never expressly passed upon the question, but it has indicated in Ehlers v. Chicago, B. & Q. R. Co., 118 Neb. 477, 225 N.W. 468, that the allowance of interest in a condemnation case may in certain situations be controlled by the equities involved. Until it declares otherwise, I believe we should assume that that Court will follow the general law, at least so far as to require the value of the use of the property, during the period of retained possession, to be credited against such interest allowance as may be designed to insure to the owner "just compensation" for the deprivation of the use of the property or the funds which represent its substituted equivalent.

I am not quite able to see the logic or warrant for restricting the offset in such a case to the cash which the property owner has actually collected, and on this point, therefore, I respectfully dissent.