GEORGE MCGINLEY ET AL., APPELLEES, V. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.

271 N. W. 864

FILED MARCH 9, 1937. No. 29821.

*E. H. Evans* and *Beeler, Crosby & Baskins,* for appellant.

*Halligan, Beatty, Halligan & Maupin* and *G. J. McGinley,* contra.

Heard before GOSS, C. J., GOOD, PAINE and CARTER, JJ., and RYAN and KROGER, District Judges.

GOSS, C. J.

Defendant appeals from a judgment on verdict for $23,-813.70, with 6 per cent. interest thereon from November 19, 1935, which was the date of the overruling of the motion for new trial and of the entry of the judgment.

The action was for damages for taking 68.7 acres of land owned by plaintiffs by virtue of deeds coming down from the government and of certain accreted land and

islands to the center of the present river. The acreage of the accreted and island land is not clearly shown in the evidence. The action arose out of the condemnation of land for a dam and reservoir located on the North Platte river in Keith county. The damages were recovered by the McGinleys for the land actually taken and for consequential damages to the remainder of their lands by reason of the construction of the dam and its necessary dikes to hold a reservoir of water. The condemnation took about a mile and a half of the McGinleys' five or six miles of frontage on the north side of the river.

In answer to special interrogatories submitted to the jury, they fixed the value of the land actually condemned and taken at $3,942.80, and the damages to the other lands of the McGinley ranch at $18,400. The difference between the sum of these two amounts and the verdict probably resulted from the computation of interest by the jury from the date of condemnation and taking of the land to the date of the verdict.

The consequential damages were submitted to the jury and determined by them on the whole ranch, which extended irregularly for many miles to the north line of Keith county and to some extent into Arthur county on the north. Mr. McGinley testified that he has 46,500 acres of deeded land, 2,560 acres of school land, and 440 acres of other leased land in the ranch, all of the deeded land being in his own name except 160 acres which is in his wife's name; that the ranch has 4,000 acres of bottom land and that the balance is sandhill pasture land.

The district objected to this evidence of consequential damages to that portion of the ranch extending so far from the river. While the McGinley petition claimed damages of $35,000, there was evidence of their witnesses that the damages to the ranch amounted to what would be at least one dollar an acre or $46,000.

The McGinleys' petition sets forth that the ranch was a compact body with approximately six miles of frontage on the river and extending north; that the farm-house,

barns, corrals and other improvements are located approximately one mile from the village of Keystone, where there is a shipping point on the railroad; that the river provides running water for its cattle and that there are many hundreds of acres of land in the ranch along the north bank of the river providing a very high type of hay-meadow for the production of hay and other feed for live stock and providing winter range; that along the north bank of the river a very heavy growth of trees and underbrush exists, which is useful for the shelter, protection and care of the livestock in the winter months; that plaintiffs run from 4,000 to 5,000 head of live stock on the ranch; that the reservoir of water proposed to be held by the dam and dikes will hold water to a depth of nine feet in the winter; that they will constitute a great menace and an ever-existing potential danger to cattle held upon the ranch during the winter months, in that, if any cattle during storms or blizzards should drift over the bank and into the water as so impounded, they will be lost, whereas, the river is naturally a shallow stream not productive of such menace; that this danger, known to those familiar, will decrease the market value of the ranch; that along the stream, prior to the construction of the works, were a number of water-holes which never froze in the severest winter and constituted a place to water cattle in the winter and a very valuable asset to the ranch, but they are cut off and destroyed by the works of the district; that along the entire bank of the river much of the timber and underbrush, which provided shelter for the cattle in winter from storms and in the calving period, has been destroyed or rendered valueless through flooding; that the danger of the dam or dikes breaking is a menace to the ranch and to improvements by the ranch owners and materially reduces its market value. In general it may be said that there was evidence supporting all these allegations of the petition.

The main questions are as to whether damages to the whole ranch, consisting of 46,500 acres of land, are to be considered in fixing the consequential damages to the re-

mainder of the ranch by reason of the works constructed by the district, or whether there is a more limited area of the ranch to be considered on this phase, and, if so, what is that area?

In 10 R. C. L. 157, sec. 138, it is said: "In determining what constitutes a separate and independent parcel of land, when the property is actually used and occupied, unity of use is the principal test, and if a tract of land, no part of which is taken, is used in connection with the same farm, or the same manufacturing establishment or the same enterprise of any other character as the tract, part of which was taken, it is not considered a separate and independent parcel merely because it was bought at a different time, and separated by an imaginary line, or even if the two tracts are separated by a highway, railroad or canal."

2 Lewis, Eminent Domain (3d ed.) 1207, sec. 698, says: "Under the rule that, where part of a tract is taken, damages or benefits to the entire tract may be considered, it sometimes becomes a question of some difficulty to determine what is to be regarded as the entire tract. In general it is so much as belongs to the same proprietor as that taken, and is continuous with it and used together for a common purpose. Thus, the whole of a farm is one tract, although it may consist of several government subdivisions, or lie partly in different counties, or have its parts separated by a highway or railroad or canal, and though the fee of the canal is in the state."

The principle that one whose land was condemned was not limited in his damages to the particular lot or subdivision, a part of which was taken, but was entitled to damages to his other lands for the direct effect of the taking of the lands condemned, began early to find expression in our cases. *Northeastern N. R. Co. v. Frazier*, 25 Neb. 42, 40 N. W. 604; *Blakeley v. Chicago, K. & N. Ry.*, 25 Neb. 207, 40 N. W. 956; *Atchison & N. R. Co. v. Boerner*, 34 Neb. 240, 51 N. W. 842; *Fremont, E. & M. V. R. Co. v. Bates*, 40 Neb. 381, 58 N. W. 959 (where substantial damages were affirmed for depreciation of a 320-acre farm, by reason of

a railroad run diagonally across one quarter section only).

In *Scace v. Wayne County,* 72 Neb. 162, 100 N. W. 149, the owner had 313 acres adjoining the city of Wayne, part of it in section 16 and part in section 17. The entire tract was fenced and used together. A road was established cutting off 80 acres from the remainder of the tract. It deprived the owner of the use of a well, wind-mill, and tank located upon the land taken for the road and necessitated new fences. The court refused an instruction requested by the owner asking damages for the depreciation in value of the whole farm, and instructed the jury to find as damages only the fair market value of the land taken and the reasonable expense of moving the fence therefrom to the side of the road. The judgment was reversed, this court holding that the measure of damages was the depreciation in value of the entire tract, less benefits accruing to the owner.

*Wiles v. Department of Public Works,* 120 Neb. 689, 234 N. W. 918, involved the appropriation of a strip of ground across the southeast corner of plaintiff's 385-acre farm, cutting off about 43 acres from the remainder of the farm. Plaintiff got a verdict and judgment for $9,000. This was reversed as excessive, but was affirmed on condition that plaintiff would remit $3,000. The opinion reviews quite a number of Nebraska cases and remarks that in none of them "is the size of the tract as large as in the case at bar, i. e., 385 acres."

*Crawford Co. v. Hathaway,* 67 Neb. 325, 93 N. W. 781, is invoked by appellant as fixing the rule that consequential damages, involved in the condemnation of riparian rights, are limited to lands adjoining the riparian lands condemned and not extending beyond the government fraction acquired by a single entry or purchase from the government. The thirteenth and fourteenth syllabus points in that case say:

"Land, to be riparian, must have the stream flowing over it or along its borders.

"The extent of riparian land cannot, in any event, exceed the area acquired by a single entry or purchase from

the government; and whether, in view of the policy of the government in the disposition of its public lands, such riparian land may exceed the smallest legal subdivision of a section—that is, 40 acres—or in lieu thereof, if an irregular tract, a designated numbered lot, which is bordered by a natural stream, or over which it flows, *quære.*"

The text of the opinion, as shown on pages 353 to 356, fully elaborates the thesis of the syllabus, cites the authorities supporting it, and queries, but does not decide, whether the riparian rights should be attributed to a governmental entry of 40 acres or of a larger quantity of land not exceeding 640 acres.

The McGinleys claimed damages in this case for (1) the condemnation of their riparian lands and rights, and (2) for damages to the remainder of their ranch by reason of the taking or cutting off of rights arising out of their riparian ownership. Under the implications of *Crawford Co. v. Hathaway, supra,* no riparian rights attached to any of their ranch unless it was an unsevered part of the governmental subdivision possessing the attributes of riparian lands along the river. Other parts of the ranch, near or far, never had any riparian rights. They never could attain them because it was contrary to the nature of things. Riparian rights are such because they arise from being on the banks of a river or stream.

It is quite apparent that the unity of use rule we have quoted from Ruling Case Law and from Lewis on Eminent Domain does not apply to damages for taking land and thus depriving the owner of his riparian rights therein to the same extent as to area as it does where condemnation of a part of a farm is had for a railroad or for public works where riparian rights are not involved. For the ordinary condemnation for use of a railroad or for public works, the land that is damaged would seem from the authorities to take in all parts of a farm or ranch whose unity of use is impaired by the owner's deprivation of that which is taken (though we do not wish to lay down the rule that it would affect the uttermost part of a large ranch such as is in-

volved here). But where the condemnation of riparian land takes place, the rule of unity of use is confined to the damages suffered by the owner on the governmental fraction of the land, a part of which is taken. The reason for thus limiting the area for which damages may be claimed is that the riparian rights which are taken arise out of the fact that the owner, or his predecessor, obtained title to his riparian land from the government. Lands farther removed from the stream or river, though obtained from the same source, had no riparian rights whatever, no matter by whom owned. This we think is the logical rule. It is clearly the rule set forth in *Crawford Co. v. Hathaway, supra.* Though that case does not decide whether the damaged area, where riparian rights are condemned, is 40 acres or 640 at the maximum, we think the policy is left to be determined in the circumstances of each particular case; and that the damages to the remainder of the ranch involved here, by reason of the unity of use of the ranch, are confined to those sections of land parts of which are actually deprived of their riparian rights by reason of the land taken by the district for its use. We extend the right to recover to a whole section more or less arbitrarily, but chiefly because in that territory it has been possible to acquire a section of land from the government.

It follows that the district court erred in its instructions and in the admission of evidence allowing the jury to fix consequential damages to the vaster area of the ranch involved. The judgment of the district court is reversed and the cause is remanded for a new trial in harmony with this opinion.

REVERSED.