GEORGE MCGINLEY ET AL., APPELLEES, V. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.

275 N. W. 593

FILED OCTOBER 29, 1937. No. 29821.

*E. H. Evans* and *Beeler, Crosby & Baskins,* for appellant.

*Beatty, Maupin, Murphy & Derry* and *Gerald J. Mc-Ginley, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and CHAPPELL, District Judge.

ROSE, J.

The Platte Valley Public Power and Irrigation District commenced this proceeding in the county court of Keith county September 21, 1934, to condemn and appropriate to its own use 68.7 acres of deeded land and 9.43 acres of accreted land, for a dam, dikes and reservoir in the basin of the North Platte river. This deeded and accreted land was owned by George McGinley and Margaret McGinley, his wife. It is situated in sections 2 and 3, township 14 north, range 38 west, Keith county, and was part of a cattle ranch exceeding in area 46,000 acres.

The county court appointed appraisers who viewed the premises, heard the parties, and, on October 26, 1934, assessed the value of the deeded and accreted land and the damages to the rest of the ranch by reason of the appropriation at $35,000, and the amount of the award was promptly turned over to the county court and possession of the condemned land was taken under the power of eminent domain.

The Platte Valley Public Power and Irrigation District appealed to the district court, where it was designated as defendant, and George McGinley and Margaret McGinley, his wife, as plaintiffs, who claimed damages in the sum of $35,000. On the appeal to the district court, the cause

was tried to a jury. In answer to special interrogatories, the jury found the value of the land actually taken by defendant to be $3,942.80 and damages to other ranch lands of plaintiffs to be $18,400. In addition there was a general verdict in favor of plaintiffs for $23,813.70. From judgment for the latter sum, defendant appealed to the supreme court.

Upon review of the proceedings below, the right of plaintiffs to full compensation for the land condemned and taken was recognized and the inquiry limited to the extent of consequential damages, if any, to lands not taken, but extending from the southern boundary of the ranch in the river northward a distance of 15 miles or more and intersected by a fenced railroad and a state highway running side by side nearly east and west. In summer plaintiffs pastured about 4,000 head of cattle on sand-hills, fed them in winter farther south on hay grown on bottom lands and watered them at the unfenced North Platte river which flows eastward along the southern boundary of the ranch. Further details of the claims of plaintiffs are stated in a former opinion. *McGinley v. Platte Valley Public Power and Irrigation District*, 132 Neb. 292, 271 N. W. 864.

The judgment was reversed on the ground that the case was erroneously tried and submitted to the jury and determined on the issue that all the ranch land not taken was diminished in value, including sand-hills used exclusively in summer for grazing purposes, though some of the pasture was 15 miles from the land taken. The ruling which resulted in the reversal of the judgment for plaintiffs in the sum of $23,813.70 was stated in the syllabus of the former opinion as follows:

"In an action for damages arising out of riparian land condemned for a dam and dikes along the Platte river in Keith county, the owner is entitled to recover for the value of the land condemned and for consequential damages to the remainder of his ranch only so far as the consequential damages affect his use of the governmental sections a part of which is included in the land actually taken." *McGinley*

*v. Platte Valley Public Power and Irrigation District,* 132 Neb. 292, 271 N. W. 864.

Upon reargument and further consideration of the ruling thus stated, a different conclusion has been reached. The syllabus quoted is accordingly withdrawn and the former judgment on appeal vacated. The right of plaintiffs to just compensation for land taken under the power of eminent domain and also to damages for diminution in the value of land not taken is protected by the Nebraska Constitution, which declares:

"The property of no person shall be taken or damaged for public use without just compensation therefor." Const. art. I, sec. 21.

The power of eminent domain does not include corporate authority to take away the natural and inalienable right of an individual citizen to acquire, hold and use property and to just compensation when it is condemned or damaged for public use. Individual property rights were not created by the Constitution. They existed in the colonies before the American Union was formed or the Constitution adopted. They were previously recognized by some governments. The Romans once abandoned a plan to build a public aqueduct because a private owner of necessary land was unwilling to allow it to be used for that purpose. Later the Roman senate declared in effect that private property could be taken for public purposes, but only upon an estimate of its value. The Code of Napoleon said that one could not be compelled to give up his property except for the public good and for a just and previous indemnity. The Magna Charta contained a provision that no one should be deprived of his property except by the law of the land and by the judgment of his peers. Property of an individual is protected by the Constitution from invasion by corporations and all departments of government. Const. art. I, sec. 21. In a proceeding to condemn riparian land for public use, consequential damages to other land of the owner in the same tract are not limited to governmental sections a part of which is included in the land actually taken, where

depreciation in the value of the remainder extends beyond those sections. Syllabus to the contrary in *McGinley v. Platte Valley Public Power and Irrigation District*, 132 Neb. 292, 271 N. W. 864, withdrawn. It does not follow, however, that dual or speculative or excessive damages are recoverable for consequential depreciation in the value of land not taken for public use, though severed from an entire tract of the owner by an exercise of eminent domain.

George McGinley, plaintiff, testified in his own behalf and in substance and effect said in part: The ranch in its entirety was well balanced, having the proper proportion of hay land and pasturage, with necessary improvements adapted to that situation; 4,000 acres of hay land in bottoms and 400 acres of hay land in hills; rest, sand-hill pastures; residence and other buildings half mile from river and mile from east line; nine-room house; separate barns for 40 head of horses and 40 head of cattle; fenced railroad and public highway side by side across ranch nearly east and west about three-fourths of a mile from defendant's works; farm fences northward from the river and east and west to protect hay land in summer and confine live stock in feeding and pasturing places in winter and spring; cattle grazed on sand-hills in summer and fed and watered in southern part of ranch in winter; about five miles of ranch on river front; mile and a half of river front taken; dike 75 feet wide, 15 feet high and a mile and a half long, east and west, leaving borrow-pit north of dike to collect water, mud, snow and ice; dam and dike raising water in reservoir to overflow meadow; 68.7 acres of deeded land and 9.43 acres of accreted land taken and of value of $50 an acre, or $3,906; fair and reasonable value of ranch before construction of dam and dike $10 an acre or approximately $460,000; value afterward about $414,000.

In arriving at his opinions or conclusions, the same witness estimated the value of his hay lands at $50 an acre and his sand-hill pastures at $3 to $10 an acre and the depreciation in the value of such pasturage at $1 an acre through-

out. Elements of damage considered in proving depreciation in the value of lands not taken were: Destruction of warm springs that furnished water for live stock in winter when freezing weather cut off at the river all other sources of supply; destruction of brush which sheltered cattle during storms; exposure to increased hazards of cattle drifting with blizzards into deep water; new dangers created by borrow-pit; losses of water front; necessity for new fence five miles or more along defendant's right of way at an initial expense of $125 a mile; inconvenience and change of situation depressing values; elements of damage resulting in consequential depreciation of a dollar an acre in value of approximately 46,000 acres of pasture land. The testimony of some other witnesses for plaintiffs was practically the same as that outlined, with emphasis on a dollar an acre as a measure of depreciation in value.

On account of defendant's project, Nature will be no less bountiful with her pastures in the sand-hills than she was before the land taken was condemned. Defendant did nothing in summer pastures to interfere with cattle, fences, shelter, water, windmills, herders' camps or any other species of property. The White Tail creek, described by plaintiffs as a perpetual stream 16 feet wide, 2 feet deep and 8 miles long, flowing through the pastures, will not be disturbed by defendant. Cattle, while grazing on the sand-hills, will not go to the North Platte river for water during the summer. Defendant is not chargeable with interfering with or injuring any property of plaintiffs in the sand-hills, summer or winter. There is nothing in the record to prove that the sand-hill pastures will not make the same contribution to that part of the ranch not taken that they contributed to the entire ranch before defendant exercised the power of eminent domain.

There is no evidence that the sand-hills themselves will be injured by the taking of land or by the completing of defendant's project. If plaintiffs owned and exclusively used contiguous lands extending as far north as the Arctic Circle, reiterated testimony that such vast territory would

be depreciated a dollar an acre in value by the works of defendant would be an unreasonable method of estimating consequential damages to lands not taken and not injured in any respect. The tendency of testimony of that character, under the circumstances of this case, was to influence the jury to return a verdict for excessive damages. In addition, evidence of the personal value to plaintiffs of sand-hill pasture lands for ranch purposes crept into the record, whereas, the measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking. In a recent condemnation proceeding, the supreme court said:

"Witnesses for both parties were permitted to testify without objection to the difference in value of the whole tract before and after the taking when, as a matter of fact, it should have been limited to the difference in value of the remainder of the land not taken before and after the taking for public use." *Stull v. Department of Roads and Irrigation*, 129 Neb. 822, 263 N. W. 148.

A similar error occurs in one of the instructions in the case at bar. The jury were left free to find that all the land not taken was diminished a dollar in value on each acre, if the evidence so proved, though there was no proof that the summer pasture land in the sand-hills was of any less value for ranch purposes after the taking than it was before. There must be a limit to remote, unaffected lands that may be considered in estimating depreciation in their value by condemnation of contiguous lands taken for public purposes. *Wiles v. Department of Public Works*, 120 Neb. 689, 234 N. W. 918.

Where pasture lands, forming the principal acreage of a cattle ranch partly taken for a public purpose, will make the same contribution in value to the remainder after the taking as they previously contributed to the whole, they should not be considered in estimating the fair and reasonable market value of the entire portion of the ranch not taken.

The conclusion is that errors in the proceedings below resulted in an excessive judgment which must either be reversed or reduced by remittitur. Plaintiffs will be permitted to file within 20 days a remittitur for that part of the judgment in excess of $17,000. In that event, it will stand affirmed for the reduced amount. Otherwise, it will be reversed and the cause remanded for further proceedings, plaintiffs in any event to pay the costs.

AFFIRMED ON CONDITION.