CLARA WOODGATE ET AL., APPELLEES, v. CENTRAL NEBRASKA PUBLIC POWER AND IRRIGATION DISTRICT, APPELLANT.

292 N. W. 461

FILED JUNE 7, 1940. No. 30816.

R. O. *Canaday*, R. H. *Beatty* and M. M. *Maupin*, for appellant.

J. C. *Hollman*, E. H. *Evans* and *Urban Simon, contra*.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

ROSE, J.

The Central Nebraska Public Power and Irrigation District, a public corporation, hereinafter called the "District," commenced this proceeding in the county court of Lincoln county to condemn and appropriate to its own use 9.40 acres of land owned by Clara Woodgate, plaintiff.

The public enterprises or works in which the district is engaged are the construction, operation and maintenance of projects for the purposes of irrigation and generation of electrical energy for light and power. For these purposes the district is constructing a canal for the diversion of water at the junction of the North and South Platte rivers in Lincoln county. The canal crosses a tract of plaintiff's Lincoln county land, consisting of 84.92 acres.

For the purpose of determining the damages suffered by plaintiff, the county court appointed appraisers who viewed the premises, heard the parties and awarded plaintiff $3,750 as damages for the land taken and for depreciation in the value of the land not taken.

There was an appeal from the county court to the district court, where a spirited trial resulted in a verdict of $822.50 for the 9.40 acres taken and of $3,171.84 for damages to the 75.52 acres of land not taken, or a total of $3,994.34. From judgment on this verdict the district appealed to the supreme court.

On appeal the assignments of error are directed to the verdict as excessive, as unsupported by evidence of damages in the sum of $3,994.34 and as the result of prejudice.

The district itself proved that, under the power of eminent domain, it had taken 9.40 acres of plaintiff's land for its canal and that the construction and maintenance thereof would result in consequential damages to the remainder of her tract, 75.52 acres. There was no controversy over the right of plaintiff to recover damages. The controverted issue was the amount of damages suffered by plaintiff through the condemnation and appropriation of her land for public purposes. Rules for the determination of this question were recently stated thus:

"In a condemnation proceeding, dual or speculative or excessive damages are not recoverable for consequential depreciation in the value of land not taken, though severed from an entire tract of the owner by an exercise of eminent domain.

"The measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking." *McGinley v. Platte Valley Public Power and Irrigation District*, 133 Neb. 420, 275 N. W. 593.

Most of the material facts are shown without controversy. Before the district instituted this proceeding, plaintiff owned 84.92 acres of land in Lincoln county in the Platte valley south of the Platte river. It was practically level except that it sloped slightly to the north toward the river. It consisted of two 40-acre tracts in regular form, extending lengthwise north and south, and in addition 4.92 acres. It was all fertile, tillable land adapted to farming. There were no buildings or other improvements on this land except a fence around it. There is a public highway along the east side, affording access to and egress from the premises. A store called "Bignell" is located a short distance north of this land, but the nearest general market is Maxwell, about nine miles away. Prior to condemnation, drouth had affected

the crops on plaintiff's land in some seasons and floods in others. Across other lands south or southwest of this tract, rain waters falling on hills and in canyons still further south or southwest follow the general slope toward plaintiff's lands and the Platte river.

The right of way for the canal is 240 feet wide and the ditch will be 12 or 13 feet deep, measured from the natural surface of the ground, and 18 feet wide at the bottom. By means of artificial banks or compacted fills 3½ feet high, the surface of water in the canal when filled to capacity will be 3 feet above the natural surface of the ground and 108 to 110 feet wide. At or near the western boundary of plaintiff's land, a 36-inch drain or siphon has been constructed under the canal to convey flood waters in the natural course of drainage from the south side of the embankment to the north side of the ditch. A flange on the south end of the siphon collects the waters and a flange on the north end spreads them out on the surface of level ground.

The alignment of the canal followed the elevation or contour of the ground and prevented the crossing of the plaintiff's land at right angles or from west to east. The general direction of the right of way across the land described is northwest to southeast. The center of the land taken by eminent domain is near the center of the entire tract of 84.92. The southwest corner of the north 40 is south of the canal and the northeast corner of the south 40 is north of the canal. According to calculations about which there is no controversy, the district has taken from plaintiff 9.40 acres of her regular tract and left her two separated irregular tracts, the one north of the canal containing 40.82 acres and the one south of the canal containing 34.70 acres.

The husband of plaintiff was her principal witness. He testified generally to the character and productivity of the soil, to crops raised, to elements of damage caused by the appropriation of the land, to rainfall and to obstruction of drainage. He expressed the opinion that the fair and reasonable market value of the land before the taking was $100 an acre, including the land actually taken; that after the

taking the value of the land south of the canal was $50 an acre and the land north of the canal $20 an acre. Among the elements of damage to which he testified were the following: The 36-inch drain will back up the flood waters at the south end and wash a ditch at the north end. Irregular rows resulting from sharp angles in the lands not taken will interfere with farming and decrease their value.

Other witnesses who testified on behalf of plaintiff generally estimated the value before the taking of the land at $100 an acre and the remainder afterward at $20 to $35 an acre. By these witnesses elements of damages causing the depreciation in values were enumerated as follows: Unsightly land banks; weeds, insects and other pests along the canal; severing of original tract into two parts; short, pointed rows, an inconvenience in farming; pump irrigation requiring two pumps instead of one; danger of seepage from canal; possibility of flood waters interfering with natural drainage; inadequacy of 36-inch drain to prevent flood waters from damming back at the south end and washing a ditch at the north end. These factors in the depreciation of values were repeated time and again before the jury.

On the other hand, an engineer in the employ of the district testified from engineering data collected in the field by actual survey to the adequacy of the 36-inch drain to convey flood waters from the south end to the north end without material backing of water on the south side of the canal or washing of ditches on the north side. The husband of plaintiff admitted on the witness-stand that it had been six or seven years since much water from the hills had come onto plaintiff's lands. There is evidence, however, that in a flood waters might back up 70 feet south of the canal but would drain off quickly. There is also evidence that the entire acreage south of the canal will produce as much for farm purposes since the taking as it did before.

A real estate agent who qualified himself to testify to values said that the fair market value of the entire 84.92-acre tract before it was severed by the canal was $85 an

acre; that the value of the 75.52 acres not taken was $85 an acre before any of the land was condemned for the canal and $68 an acre thereafter. The import of the testimony of all the witnesses who testified on behalf of the district, though not the same, was similar.

Giving full credence to all material testimony relating to the elements of damage depreciating the fair and reasonable market value of the separate tracts of land not appropriated by the district, these outstanding facts remain: The entire acreage south of the canal will produce practically as much for farm purposes after the taking as before. The greater part of the acreage north of the canal will produce as much for farm purposes after the taking as before. What the land will produce is the factor most likely to engage the attention of a prospective purchaser. There are no buildings on the land. What is left of it is adapted to farm purposes. When all the evidence is considered in its true light, there is no reasonable view in which it will sustain a finding that the value of the land south of the canal was depreciated by the district from $100 an acre to $50, as witnesses for plaintiff testified, or to sustain a finding that the land north of the canal was depreciated from $100 an acre to $20 an acre, as a witness testified, or to sustain the verdict that the district damaged the two remaining tracts of 75.52 acres to the extent of $3,171.84, or $42 an acre.

The verdict is clearly excessive beyond any reasonable view of the evidence and must necessarily have been reached through some form of prejudice. The judgment is therefore reversed and the cause remanded for further proceedings.

REVERSED.