## FELTZ et ux. v. CENTRAL NEBRASKA PUBLIC POWER & IRRIGATION DIST.

## CENTRAL NEBRASKA PUBLIC POWER & IRRIGATION DIST. v. FELTZ et ux.

### Nos. 11975, 11976.

Circuit Court of Appeals, Eighth Circuit.

Jan. 15, 1942.

---

V. H. Halligan, of North Platte, Neb. (J. G. McIntosh, of North Platte, Neb., and F. Q. Feltz, Jr., of Ogallala, Neb., on the brief), for Eugene Feltz and others.

Paul E. Boslaugh, of Hastings, Neb. (R. O. Canaday, of Hastings, Neb., R. H. Beatty, of North Platte, Neb., and M. M. Mau-

pin, of Ogallala, Neb., on the brief), for. Central Nebraska Public Power & Irrigation Dist.

Before STONE, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is prosecuted by the owners of land taken in condemnation proceedings in the District Court by the Central Nebraska Public Power and Irrigation District, a public corporation organized under Nebraska law (Senate File 310 of the Session Laws of 1933, also known as Sections 70-701 to 70-715, inclusive, Cumulative Supplement to Compiled Statutes 1939), having its office and principal place of business at Hastings, Adams County, Nebraska.

It appears that the District is a duly qualified licensee under the Federal Power Act, 16 U.S.C.A. § 791a et seq., and is engaged in the construction of a dam and on-river reservoir of approximately 2,000,000 acre feet storage capacity upon the North Platte River near Keystone, Keith County, Nebraska, for power and irrigation purposes. In its petition for condemnation it described with particularity the project upon which it is engaged and asserted the necessity of acquiring the described lands of the appellants to carry out the project and that its endeavors to obtain the same by purchase had failed. It specified the provisions of law from which it had derived its powers to institute and maintain the proceedings to condemn the described lands and prayed that notice be given the landowners and that appraisers be appointed to assess the value and to assess damages.

It appeared from the petition, however, that the lands of these appellants were not lands which would be within the area of the dam or of the reservoir which was to be constructed, but that the lands were required "as incident to and necessary to the construction project" "in that the condemnor as a part of its work of internal improvement in the construction of the dam and creation of the on-river reservoir, as above set forth, will necessarily be required to acquire the right of way for United States Highway No. 26 as located within said reservoir site and the applicant has heretofore entered into a contract to acquire the right of way and to locate and construct a relocation of said highway, which relocated highway will be used to serve the purposes formerly served by the present United States Highway No. 26, and the applicant has

bound and obligated itself to procure a new right of way for the construction of said relocated United States Highway No. 26; and that the above described real estate, the subject of these proceedings, is absolutely necessary and essential to the use of the applicant in the performance of its said contract and the construction of its said work."

The appraisers appointed by the court pursuant to the petition assessed the appellants' damages for the taking at the sum of $2,473.80, their report being filed May 19, 1939. On June 2, 1939, the appellant landowners filed their bond on appeal from the appraisers' award in the District Court, and on June 14, 1939, the Power District also filed its exceptions to the award and notice of appeal. On the latter date, June 14, 1939, the District also paid in the amount of the appraisers' award to the Clerk of the District Court, but in the same instrument by which it declared that the payment was in the amount of the appraisers' award and was made in connection therewith, it notified the Clerk to withhold disbursement until the final determination of the appeals.

The parties thereafter appeared before the District Court in a pre-trial investigation and certain agreements were made by the parties and directions given by the court to enable the parties to define and simplify the issues and obtain prompt determination of the controversy. To that end, among other things, these land owners were directed to file a petition which the condemnor was required to answer.

In their petition filed pursuant to the court's direction, these land owners alleged that "the existence of [the condemnor] is wholly dependent upon the laws of the State of Nebraska for its organization and power to do business." They described two half sections of land owned by them and alleged that the land sought to be taken from them in the condemnation proceedings was situated within the same and consisted of a strip across the south side of one half section and a strip passing diagonally across the other half section from approximately the middle of the west line of the northeast quarter to the south east corner of the half section. They raised no issue as to the jurisdiction of the court but alleged that "the District required the strips of land for carrying out the purposes of the project" and that "said lands are essential and necessary for the construction of the highway (United States Highway No. 26 referred to in the petition for condemnation)". They also alleged that

the taking of the strips of land prevented the operation of their tract of land as a unit and necessitated fencing off triangular tracts which would be difficult to farm. It was further alleged:

"Plaintiffs further allege that prior to the commencement of the works of improvement undertaken by said defendant, there was located in the North Platte valley the Union Pacific Railroad Company, with the railroad facilities located at Belmar, Nebraska, which was approximately seven miles from the property owned by said plaintiffs. That said highway was a gravelled highway going from Belmar to Brule, Nebraska, and that by virtue of the location of said Belmar that the same was a shipping point of said plaintiffs for the purpose of marketing produce raised upon said property, and it was a ready market within said valley to cattlemen feeding cattle for the produce raised by said plaintiffs. That by virtue of the construction of said works of public improvement by the said defendant, the entire North Platte valley has been taken by said defendant and the Union Pacific Railroad has been moved to the North of said valley, and that upon the operation of said Project by said defendant, the plaintiffs' land will be entirely cut off from railroad facilities and marketing facilities, and that the cost of marketing said produce will be greatly increased and that said land will now be separated from the market by approximately twice as far as prior to the time of the construction of said works of internal improvement by said defendant, and that said lands will now be located approximately fourteen miles from the nearest railroad and market place, which will greatly increase the cost of marketing said produce raised upon said property, and places said land at a great distance from any marketing point, and by reason thereof has greatly depreciated the value of said property by virtue of said construction of the works of internal improvement to be carried on by said defendant, and that said plaintiffs herein have been damaged by virtue of the taking of said lands as heretofore described in the reasonable value of said lands so taken, and the damage to the remaining part of said lands not taken, in the total sum of $16,000.00, no part of which has been paid."

In its answer the District denied that its existence is wholly dependent upon the laws of the State of Nebraska "but that said [District] corporation has some powers and rights conferred upon it under and by virtue of the laws of the United States." The District admitted that the taking of the land of the appellants which was actually taken divided their property into two tracts, but alleged that each of the tracts was of sufficient size to be conveniently operated and the tracts remain adjacent to each other, convenient for use as an operating unit. That the highway to be constructed is a hard surface road of the latest type of construction, being a part of the United States Government System of Highways known as U. S. Highway No. 26. That there were special benefits to appellants' property exceeding any consequential damages occasioned by the taking. The allegations of paragraph 5 of the petition above set forth were denied.

On the trial to the court and jury the jury returned a verdict for the total damage on account of the taking in the sum of $1,914.12. It answered in response to special interrogatories that the value of the 8.15 acres taken from Section 1 was $343.75; that the value of the 11.18 acres taken from Section 7 was $279.50, and that the consequential damages accruing to appellants' remaining 308.82 acres was $1,290.87. The court found that the amount of the verdict ($1,914.12) was less than the amount of the award of the appraisers ($2,473.80); that the District had taken possession of the appellants' strips of land at the date of the institution of the action (April 29, 1939); that interest should therefore run from that date, and it entered judgment on the verdict for $1,914.12 together with interest from April, 1939.

The landowners have appealed in No. 11,975 and the District in No. 11,976. There is a single transcript of record and the appeals were submitted and considered together.

## No. 11,975.

On this appeal the appellant landowners contend (1) that the federal District Court had no jurisdiction to entertain the petition for condemnation because the lands were not required for the dam site or for the reservoir of the project but were required only for the new relocated United States Highway No. 26 agreed to be substituted for old United States Highway No. 26 taken by the project; (2) that the amount of the verdict was grossly inadequate and the trial court committed prejudicial error in excluding testimony and denying a certain offer of proof made by appellants.

582

■ (1) The appellants have not contended that the Power District is not a duly qualified licensee under the Federal Power Act or that the federal District Court lacked jurisdiction to entertain the District's petitions to condemn lands necessary for the dam site and reservoir of the project. Their point is that the federal jurisdiction does not extend to the case here presented where the development of the project necessitated the abandonment of an established public highway, an obligation incurred by the District to substitute a new highway therefor and condemnation by the District of land for the new highway.

The jurisdiction of the federal District Court is predicated on 16 U.S.C.A. § 814, which reads: "When any licensee cannot acquire by contract or pledges an unimproved dam site or the right to use or damage the lands or property of others necessary to the construction, maintenance, or operation of any dam, reservoir, diversion structure, or the works appurtenant or accessory thereto, in conjunction with an improvement which in the judgment of the commission is desirable and justified in the public interest for the purpose of improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such land or other property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceedings in the courts of the State where the property is situated: Provided, That United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000."

It is apparent that there are no words of the statute which relate in express terms to the problem presented when the development of a project necessitates the removal of such utilities as railroads, highways, streets, or alleys that lie within the project area and the relocation of the same outside of the project area where their use and service to the public may be continued. It is pointed out by appellants that the new Highway No. 26 is at no point closer than three miles to the reservoir basin and that it does not lead to the dam site or works but connects the towns of Lewellen and

Ogallala, and it is argued for appellants that the condemnation proceedings herein are the same as if a landowner had agreed to relinquish his lands in the project's basin for lands in another river basin and the attempt of the District was to obtain such new lands for him by condemnation.

On the other hand, the District's position is that its relocation of the Highway out of the project basin was so closely and actually incidental to its work of public improvement that the taking and damaging of appellants' lands must be deemed to have been done "in conjunction with an improvement" within the meaning of the Act and was therefore authorized by the Act.

It must be conceded that there are situations in which an attempted taking of land may be too remote from the scope of an authorized improvement to be sustained. But in this case we think it resulted from the public interests involved in the maintenance of the public highway as a part of the Highway System of the United States and the public interest in the development of the power and irrigation improvement that the work of highway relocation aided and contributed in a secondary way and was "accessory" and "in conjunction with" the District's improvement and the District's power to condemn must be sustained under the decisions of the Supreme Court in Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171 (where Pitznogle v. Western Maryland Railroad Co., 119 Md. 673, 87 A. 917, 46 L.R.A.,N.S., 319, was cited with approval). See also Dohany v. Rogers, D.C.Mich., 33 F.2d 918, affirmed 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904, 68 A.L.R. 434; Fitzsimmons & Galvin v. Rogers, 243 Mich. 649, 220 N.W. 881; George D. Harter Bank v. Muskingum Watershed Conservancy Dist., 53 Ohio App. 325, 4 N.E.2d 996; Darwin v. Town of Cookeville, 170 Tenn. 508, 97 S.W.2d 838; Smouse v. Kansas City S. Ry. Co., 129 Kan. 176, 282 P. 183; 18 Am.Jur., p. 711, ch. 80; 68 A.L.R. 442.

■ The question of the power of the District to maintain the condemnation in this case was not raised or presented in the District Court. On the contrary, the necessity for the taking of the lands for the public use was there admitted. But appellants have contended for the first time in this court that the District Court was without jurisdiction. Although the question of the federal jurisdiction may be said to be always open in this court, the

contention of appellants that the taking of their lands was not authorized by the federal statute does not go to the jurisdiction of the District Court but to interpretation of the federal statute. The action of the court in sustaining the petition for condemnation and according jury trial on the issue of damages is sustained.

(2) As to the question of the court's rulings upon testimony offered by appellants to show consequential damage.

It appears that the testimony offered and excluded did not relate to damage claimed to result from the District's taking of the strip of appellants' land for the highway but related to consequential damage from the dam and reservoir construction as alleged in the fifth paragraph of the appellants' petition above set forth. The substance of appellants' offer to prove was that prior to the project development the appellants had a market place and use of a gravelled road leading to it, at the Union Pacific Railroad siding called Belmar, where there were railroad shipping facilities, a little country store and a post office, all of which had to be removed by the District. After such removal the appellants' nearest market place was several miles further away and the offer of proof was that the half section of Section 1 of appellants' lands would be depreciated at least $5 per acre in consequence. In ruling upon the offer to prove, the trial court, after describing Belmar as one of the several Union Pacific loading stations located from six to ten miles apart in the valley, shown to have a little country store, a post office and a loading place, stated: "The court rules that any damage due to the destruction of the town of Belmar is damage common to all of the inhabitants around it", and as the court observed no special damage which the appellants had sustained that was not common to the landowners in their neighborhood, it denied the offer to prove.

█ Nebraska law is applicable and appellants assert error in the rulings, relying upon the state's constitutional provision that the property of no person shall be taken or damaged for public use without just compensation therefor (Art. 1, Sec. 21) and the decisions in Steck v. Platte Valley Public Power & Irrigation Dist., 132 Neb. 822, 273 N.W. 268; Lowell v. Buffalo County, 119 Neb. 776, 230 N.W. 842; Jones v. City of Aurora, 97 Neb. 825, 826, 151 N.W. 958; Stehr v. Mason City & F. D. R. Co., 77 Neb. 641, 110 N.W. 701, 124 Am.St.Rep. 872.

Consideration of the citations has not persuaded us that the trial court's ruling was erroneous. The case of Steck v. Platte Valley Pub. Power & Irr. District, supra, does not appear to support appellants. In that case an area covering some nine or ten sections of land had been taken for a reservoir. Steck's lands involved in the case abutted upon and were immediately south of the reservoir. The only question in the case was whether Steck sustained damage by reason of the vacation of certain highways which had run through the reservoir area. It appeared that the main highway to be vacated led through the reservoir area to Sutherland, which was Steck's only available market town, and that by reason of the improvement Steck's means of ingress to and from his land in the direction of his market town was destroyed. His land was left abutting upon a dead-end of a highway. In order to go to Sutherland he would have to travel over a crooked, winding, hilly road with abrupt turns around the reservoir and a distance of two or more miles farther going to market. The court held on that state of facts there was proof of special damage to Steck requiring submission to the jury. It pointed out that there was a difference between the injury to Steck's land whose ingress and egress to the north were cut off, and the injury to the lands of others in the community. But the court clearly recognized the rule of law as declared by the District Court in this case. It said, "The [Power and Irrigation] district also contends that Steck suffers no damage or injury to his lands other than that suffered by the community in general. If this were true, it would no doubt be a bar to any recovery by Mr. Steck." [132 Neb. 822, 273 N.W. 270.]

█ Appellants have sought to assimilate their case to the facts in the Steck case by stressing the matter of their gravelled road leading to Belmar, but we think there is a distinction. The removal of Belmar rendered its means of ingress and egress useless, not alone to appellants but to the community in general which had used them and there is the same bar to appellants' recovery in respect to the road as there is in respect to the town.

In the case at bar it cannot be held that the ingress and egress to appellants' lands have been changed. In common with

their neighbors who traded or shipped to Belmar, they must ship and trade elsewhere. They cannot be said to have had any property right in or to Belmar taken or damaged by the removal of the town or railroad within the constitutional provision relied on.

In Lowell v. Buffalo County, supra, Lowell owned a 200 acre farm located upon an island and abutting upon a long established highway. The County vacated the highway and abandoned the bridges, thereby cutting off Lowell's egress and ingress towards his market towns except by circuitous routes. The relevant statute provided for the ascertainment and payment of damages to private property by the vacating of a public highway, Comp. St.1922, § 2586. It was decided that because the vacating of the highway left Lowell's property in a cul de sac and cut him off from the means of ingress and egress which he had enjoyed as an owner of land abutting on the highway, special damage had been directly inflicted for which he could recover. But the Court [119 Neb. 776, 230 N.W. 844] pointed out that "according to a familiar doctrine, a landowner cannot ordinarily recover on account of a lawful public improvement, damages that he suffers in common with the public generally, though his loss may be greater in degree."

Jones v. City of Aurora, supra, presented another instance of special damage occasioned to an owner of property abutting upon public streets which were vacated. The court said [97 Neb. 825, 151 N.W. 960], "In closing these streets and placing plaintiff's property at the end of a pocket street her damage is different from that of the general traveling public, and she suffered damage special and peculiar to this property, and different from that of the general public." Likewise in Stehr v. Mason City & F. D. Ry. Co., supra, the vacation of certain streets and narrowing down of the street immediately in front of Mrs. Stehr's property was held to have caused special damage for which she could recover.

But the effects upon appellants' property resulting from the District's absorption of Belmar in this case appear more closely analogous to those considered in Burkley v. City of Omaha, 102 Neb. 308, 167 N.W. 72, and in the line of Nebraska cases there cited, and we conclude that the trial court did not err in holding that the appellants suffered no special damages different in

kind from the general community loss occasioned by the inclusion of Belmar within the project or in denying appellants' offer to prove.

### No. 11,976.

The appeal of the power and irrigation district is to reverse that part of the judgment described in No. 11,975 by which the court added interest to the amount of the jury's verdict from the date of the taking of the strip of land for Highway No. 26. The appellant herein contends that because it deposited the amount of the appraisers' award with the Clerk of the Court at the time it filed its petition and took the land, and because the landowners did not obtain a more favorable judgment and award upon their appeal than was given them by the appraisers, no interest was chargeable against the District. As stated the award of the appraisers was $2,473.80 and the verdict of the jury was $1,914.12. The landowners appealed first and then the District appealed, and the District directed the Clerk to withhold disbursement of the deposit made with him until determination of the appeals.

The controlling provision of the Nebraska statute is "if on appeal the appellant shall not obtain a more favorable judgment and award than was given by said freeholders [appraisers], then such appellant shall be adjudged to pay all the costs made on such appeal" (Sec. 74–307, Comp.St. 1929). This meagre provision has been frequently considered by the Supreme Court of the state and the answer to the single question presented by this appeal must be found in the words of the statute and the interpretation given by the court.

The District relies upon Swygert et al. v. Platte Valley Public Power & Irrigation District, 133 Neb. 194, 274 N.W. 492; McGinley v. Platte Valley Public Power & Irrigation District, 132 Neb. 292, 271 N.W. 864; Id., 133 Neb. 420, 275 N.W. 593; Sioux City R. R. v. Brown, 13 Neb. 317, 14 N.W. 407; Berggren v. F., E. & M. V. R. Co., 23 Neb. 620, 37 N.W. 470; Atchison & N. R. R. Co. v. Plant, 24 Neb. 127, 38 N.W. 33; Burlington & M. R. Co. v. White, 28 Neb. 166, 44 N.W. 95; Chicago, R. I. & P. R. Co. v. Buel, 56 Neb. 205, 76 N.W. 571; Grimm v. Elkhorn Valley Drainage District, 98 Neb. 260, 152 N.W. 374. Our study of the cited cases convinces that under Nebraska law a landowner who appeals from an appraiser's award of damages in condemnation proceedings

may not recover interest on the verdict of the jury where such verdict is equal to or less than the award of the appraisers.

The appellees contend that a different conclusion should follow on the facts in this case from Sioux City R. R. Co. v. Brown, 13 Neb. 317, 14 N.W. 407; Harlan County v. Hogsett, 60 Neb. 362, 83 N.W. 171; Atchison & Nebraska R. R. Co. v. Plant, 24 Neb. 127, 38 N.W. 33; Berggren v. Fremont, Elkhorn & Mo. Valley R. R. Co., 23 Neb. 620, 37 N.W. 470; Burlington & M. R. R. Co. v. White, 28 Neb. 166, 44 N.W. 95.

Sioux City R. Co. v. Brown, supra, turned mainly upon the instruction given by the court to the jury that "in case the value of the lots [taken in condemnation] was found by them to exceed the award appealed from, they should allow interest on that value from the time of condemnation". The Supreme Court sustained the instruction. Its discussion justifying the inclusion of interest in the judgment, however, related to the instruction and the decision is allowable where, as in this case, the jury finds the damages to be less than the award of the appraisers.

In Atchison & Nebraska R. R. Co. v. Plant, supra, the condemnor appealed from the award of the appraisers and on such appeal failed to obtain a more favorable judgment than was given by the appraisers. The court held upon such facts that the landowner was entitled to interest and costs. In Burlington & M. R. R. Co. v. White, supra, the award of the appraisers was $975 and the verdict of the jury on appeal was $2,300. It was held that the trial court should have given the instruction as to the inclusion of interest approved in the Brown case, supra, but having withheld that instruction at the request of the condemnor there was no prejudicial error because in its judgment the court properly added interest to the larger amount found by the jury.

In Harlan County v. Hogsett, supra, it was held that in a suit against a county to recover damages for location of a highway the cause of action arose at the time of the taking. Hogsett was not the owner at that time and therefore had no cause of action. The case would be authority for allowing interest from the date of the taking if the appellants had succeeded on their appeal. It does not aid said appellants here.

Ehlers v. Chicago, B. & Q. R. Co., 118 Neb. 477, 225 N.W. 468, was an independent suit in equity for enforcement and distribution of an award made by appraisers appointed in condemnation proceedings to assess damages for the taking of the plaintiffs' property. There was a question in the case as to Ehlers' right to recover interest upon the award and it was held that neither equity nor law called for the allowance of interest to him. But the question involved in this case as to whether interest should be allowed the landowner where an appeal has resulted in a verdict for less than the appraisers' award was not squarely before the court and the decision cannot be deemed controlling here.

None of the cases relied on by the appellees appears to sustain their judgment for interest in this case.

■ There is and can be no serious contention that the Nebraska rule, as we find it in Nebraska decisions, is unconstitutional. The landowner who avails himself of his right to have his claims judicially determined must bear a burden of litigation. Pending his appeal he may have to go without either his land or his money, and if his litigation is unsuccessful there is no compensation by way of interest. On the other hand, the condemnor who takes land for public uses must also bear a burden. Before taking the land it must part with its full value, so determined by appraisers. If litigation results adversely to it, it must pay interest as well as any additional recovery. If it succeeds it has no compensation for the excess of the money with which it parted when it took the land. Such incidents of litigation are entirely compatible with the Nebraska constitutional requirement that all courts shall be open, and every person for any injury done him in his land, goods, person or reputation shall have remedy by due course of law and justice, administered without denial or delay, and with the requirement that the property of no person shall be taken or damaged for public use without just compensation therefor.

■ It is contended that the action of the District in prosecuting its own appeal from the award of the appraisers ought to be deemed justification for inclusion of interest in the judgment, but we find no authority for so holding. We conclude that the trial court erred in including interest in its judgment.

The judgment appealed from is accordingly modified so as to exclude the item of interest and as so modified the judgment in the amount of $1,914.12 is affirmed.