IN RE PETITION OF NEBRASKA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC.
MCMILLAN CO., A CORPORATION, ET AL., APPELLANTS AND CROSS-APPELLEES, V. NEBRASKA ELECTRIC GENERATION AND TRANSMISSION COOPERATIVE, INC., A COOPERATIVE CORPORATION, APPELLEE AND CROSS-APPELLANT.
224 N. W. 2d 184

Filed December 19, 1974. No. 39503.

Quigley, Dill & Quigley, for appellants.

Olds & Swarts and David & Clark, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

McCOWN, J.

This is a condemnation case involving an easement for an electric transmission line across a portion of a sandhills cattle ranch. The jury returned a verdict of $34,616. Upon the landowner's refusal to accept an ordered remittitur of all damages in excess of $19,000, the District Court granted a motion for new trial. The landowner has appealed.

The plaintiff, McMillan Co., a corporation, is the owner of a sandhills grazing ranch located in Thomas County, Nebraska. The ranch contains a total of 12,808 acres comprised of a part or all of 30 sections of land in three townships. The land is contiguous but is not compact. Two portions of the ranch are connected to the main body by "necks" of land that are approximately half a mile wide. The 100-foot-wide easement is for a 115,000 volt electric transmission line. There are 34 two-pole structures and 1 three-pole structure, set at intervals of approximately 750 feet. The easement extends across the plaintiff's ranch for a distance of approximately 4.8 miles. The total number of acres within the 100-foot easement is 58.54 acres. Approximately 20.72 acres of that total is in an area suitable

for irrigation and the remaining 37.82 acres are on land too hilly to be suitable for irrigation. A portion of the right-of-way crosses the only substantial amount of level land on the ranch. In this level area there are approximately 410 acres of land which are suitable for the development of center pivot irrigation. Of this 410 acres, 250 acres would still be irrigable by center pivot irrigation after the construction of the line. The other 160 acres would still be irrigable by systems of smaller size, but such irrigation might not be economically feasible. At the time of trial none of the plaintiff's land was irrigated and there were no agreements or arrangements for its irrigation in the immediate future, although there was evidence that plaintiff had considered the possibility of irrigation. Approximately 800 head of cattle had been grazed on the ranch prior to the time of trial.

On March 21, 1973, in the condemnation proceedings in county court, the appraisers awarded $5,500 damages to plaintiff. From that award the plaintiff appealed to the District Court. The major issue at the trial in the District Court and on appeal in this court involves the amount of damage to plaintiff's property.

Tony A. Wiese operated the ranch under a lease from the plaintiff and was also a stockholder in the plaintiff corporation. He testified that the value of the ranch before the taking was $100 an acre or $1,300,000, and that the amount of damage by virtue of the easement was $200,000. He testified that his opinion was based upon his own feelings and not his knowledge of sales of property in the area. He also testified that in May of 1973, after the entry of the condemnation award in the county court, as lessee, he had executed a new 5-year written lease of the ranch at a rental of $2.50 an acre, and that the new lease replaced a 5-year lease executed in 1968 under which his rental was $2 an acre.

The plaintiff's only expert real estate witness was Keith Sorum. He testified that the development of ir-

rigation makes property more marketable, and that if the 410 acres suitable for irrigation were developed, the cattle-carrying capacity of the ranch would increase from 800 to a total of 1,000 to 1,050 head. Another witness testified that irrigating the 410 acres would increase the capacity to approximately 1,200 head. Sorum also testified that the total value of the ranch before the taking of the easement was approximately $70 per acre and after the taking was approximately $60 per acre, and that the total damages were therefore $128,080. Some of his testimony was conflicting and some of the formulas he used were confusing, but he did testify that the damage of $10 per acre extended to the entire 12,808 acres of the ranch. His testimony as to that damage rested upon the conclusion that the easement interfered with the development of future irrigation on the 410 acres suitable for that purpose.

The expert witnesses for the defendant testified as to numerous sales of similar properties in the area. Mr. Fischer valued the unirrigated land on plaintiff's ranch at $60 an acre, and the land that could be irrigated at $125 an acre, and testified that the ·damage to plaintiff's property was $3,400. Mr. Clayton testified that in his opinion the plaintiff's ranch was worth approximately $65 an acre at the time the transmission line was constructed and that the total damages to plaintiff's land were $5,500. These witnesses also testified that the 410 acres could still be irrigated with a center pivot system.

Virtually all witnesses agreed that the easement did not damage the remainder of the plaintiff's property for grazing purposes nor affect the grazing capacity of the land. The issues on damage center on the land actually covered by the easement and on the future irrigation development of the 410 acres suitable for such development.

The jury verdict fixed plaintiff's damage at $34,616. The defendant filed a motion for new trial which was:

argued and submitted. The trial court found that the only two items of damage of consequence were the inconvenience caused by the construction and maintenance of the transmission line easement and the limitation of use of the land in constructing center pivot irrigation systems. The court further found that the evidence that damage extended to the entire area of the ranch was logically and evidentially unsupportable, and that at best plaintiff's evidence established only that 160 acres of land might be lost for development for center pivot irrigation. The court assumed that the value of the 160 acres of land might be enhanced $100 per acre if it were irrigated. The court also added 70 percent of the value of the entire 58 acres covered by the 100-foot easement, which was less than $3,000, and found that $19,000 was the maximum amount of damages that the evidence would sustain. The court entered an order requiring the plaintiff to file a remittitur for all amounts in excess of $19,000 or otherwise the motion for new trial would be sustained. When the plaintiff filed its election not to file a remittitur, the court sustained the motion for new trial and this appeal followed.

Unless we can say that there is no legal cause or reason for ordering the conditional remittitur or granting a new trial, the action of the trial court must be sustained. Whether the trial court's decision on a motion for new trial was to grant a new trial or to deny one, the questions on appeal are whether error or errors appear in the record; whether they were called to the attention of the trial court; and whether they constitute prejudicial error to the party complaining. The District Court has the power and is required to consider and determine motions for a new trial by the exercise of its judicial discretion, and in that connection judicial discretion means the application of statutes and legal principles to all the facts of a case. Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772.

Among other reasons, the motion for new trial alleged that the verdict was excessive and unsupported by the evidence, and that the court erred in failing to give certain requested instructions.

The defendant requested an instruction that the plaintiff was not entitled to damages to the remainder of the entire ranch because the transmission line crosses a portion of the ranch, unless a preponderance of the evidence shows that the construction of the transmission line had an adverse effect upon the market value of the entire ranch at the time of the taking. The requested instruction also included an instruction that the jury was not permitted to speculate as to the peculiar value of the land to the owner for special purposes or reasons. The instruction was refused.

Although the instruction may not have been entirely accurate, it reflects the pertinent issue here of whether pasture lands whose use is in no way restricted by the taking are damaged or depreciated in value as a consequence of such taking. We have held that in the case of a transmission line easement, the only thing to be considered is the damage to the land resulting from a restriction of use, and that consideration must be limited to that portion of a farm or ranch whereon the use has in fact been restricted. See Wahlgren v. Loup River P. P. Dist., 139 Neb. 489, 297 N. W. 833. We have not limited recovery of damages under Wahlgren to the boundaries of the electrical transmission line easement itself. See Hughes Farms, Inc. v. Tri-State G. & T. Assn., Inc., 182 Neb. 791, 157 N. W. 2d 384. Nevertheless, we have held that consequential damages may not be recovered for land not taken and not injured or restricted as to use, simply because it is owned and used as a part of a contiguous unit, some other part of which is damaged. In McGinley v. Platte Valley P. P. & Irr. Dist., 133 Neb. 420, 275 N. W. 593, we denied recovery of claimed consequential damage to 46,000 acres of pasture land. In that case we held that where pas-

ture lands, forming the principal acreage of a cattle ranch partly taken for a public purpose, will make the same contribution in value to the remainder of the ranch as they previously contributed to the whole, they should not be considered in estimating the fair and reasonable market value of the entire portion of the ranch not taken. We said: "The jury were left free to find that all the land not taken was diminished a dollar in value on each acre, if the evidence so proved, though there was no proof that the summer pasture land in the sand-hills was of any less value for ranch purposes after the taking than it was before. There must be a limit to remote, unaffected lands that may be considered in estimating depreciation in their value by condemnation of contiguous lands taken for public purposes."

The evidence in this case is undisputed that the vast majority of the land comprising the contiguous area of plaintiff's ranch will not be affected or restricted in its use by virtue of the easement. Aside from the 58 acres within the boundaries of the easement proper, the evidence is persuasive that at best only 160 acres of land otherwise suitable for irrigation may no longer be suitable. It is not necessary that we find that the proper amount of damages was $19,000. It is only necessary that we find tenable grounds to support the conclusion that the jury verdict of $34,616 is excessive. Such grounds are clearly present.

The trial court was acting within the proper bounds of its discretion in entering the order granting a new trial upon the refusal of the plaintiff to file the remittitur. The judgment of the District Court is affirmed.

AFFIRMED.